ERIC A. NYBERG, ESQ. (Bar No. 131105)
CHRIS D. KUHNER, ESQ. (Bar No. 173291)
**KORNFIELD, NYBERG, BENDES, KUHNER & LITTLE P.C.**
1970 Broadway, Suite 600
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669
Email: e.nyberg@kornfieldlaw.com
Email: c.kuhner@kornfieldlaw.com

Proposed Attorneys for Debtor NEXTSPORT, INC.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>NEXTSPORT, INC.,<br><br><br><br>                                     Debtor. | Case No. 22-40569 WJL<br><br>Chapter 11<br><br>**DECLARATIN OF DAVID LEE IN SUPPORT OF FIRST DAY MOTIONS AND RELATED RELIEF** |
| | Date: TBD<br>Time: TBD<br>Ctrm: 220 |

I, David Lee, declare as follows:

1.     I am the Chief Executive Officer of NEXTSPORT, Inc. (the "Debtor" or "NEXTSPORT"). I have served as NEXTSPORT's Controller from 2014 until October 2021 and as NEXTSPORT's CEO since then. I am knowledgeable and familiar with NEXTSPORT's day to day operations, business, and financial affairs, and the circumstances leading to the commencement of NEXTSPORT's Chapter 11 bankruptcy case.

2.     I know the following of my own personal knowledge, except as otherwise indicated herein, and I can competently testify thereto if called upon to do so.

3.     This declaration is submitted to apprise the court and other parties in interest of the circumstances leading to the commencement of the Chapter 11 case, and in support of (i) the

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600   Oakland, California 94612

Debtor's Chapter 11 petition and (ii) the motions the Debtor has filed with the court contemporaneously with the filing of the Chapter 11 petition (the "First Day Motions").

**Preliminary Statement**

NEXTSPORT is a privately held Oakland based toy and action sports company which sells its products both domestically and internationally. The Debtor's business over the last 2 years has been disrupted by both COVID-19 and supply chain issues. The Debtor's products are manufactured in China and shipped to various locations here in the United States and abroad.

The aforementioned factors negatively effected NEXTSPORT's business. As a result, NEXTSPORT has fallen behind with payments to factories in China that it uses to manufacture its goods. NEXTSPORT has also fallen behind with payments to warehouse companies, ocean freight companies and logistics companies that NEXTSPORT uses for both storage and shipping of its product. NEXTSPORT is a leading U.S. International toy and action sports company focused on designing, manufacturing and marketing a wide range of unique wheeled toys and action sporting good products for all ages. The company is headquartered in Oakland, California. Demand for NEXTSPORT's products remains solid and in fact is improving. New orders and programs are being put in place with Walmart who is a large component of NEXTSPORT's business. The Debtor has filed its Chapter 11 bankruptcy in order to obtain the breathing room necessary to formulate and implement a plan of reorganization.

**Company Background**

1. NEXTSPORT was founded in 2006 by Edward Dua and Julio Deulofou. Julio Deulofeu continues to be involved, but Ed Dua is a board member and investor who is no longer involved in the day-to-day operation of NEXTSPORT.

2. The management team of NEXTSPORT is led by a passionate group of professionals with experience in developing high-quality, innovative products, offshore manufacturing as well as global sales.

3. From its inception, NEXTSPORT was based on new product innovation. With an in-house forward thinking design and engineering team, products were created with the consumer

Case: 22-40569   Doc# 9   Filed: 06/13/22   Entered: 06/13/22 18:13:18   Page 2 of 70

KORNFIELD

NYBERG, BENDES, KUHNER & LITTLE, P.C.

1970 Broadway, Suite 600   Oakland, California 94612

in mind. Products with unique design and play patterns that match performance with value, designed to deliver fun and smartly priced products.

4. The company's family of brands are market leaders in the toy and action sports category. NEXTSPORT currently has four (4) unique brands, selling in the United States, Canada, Australia, Europe, United Kingdom at mass retail, specialty retail and direct to consumers thru Shopify.

5. NEXTSPORT's brands are as follows:

A. **FUSION Z PRO SCOOTERS –** Action sports leading scooter brand ranked in the top 3 brands worldwide. The brand sells primarily at specialty sports retailers. A Fusion sub-brand is the Fusion X which sells at mass outlet such as Target, BIG 5, Amazon, Smyths in Europe and many other outlets.

B. **ARCADE** – This is the entry level, promotionally priced action sports brands offering scooters and skateboards. Arcade has become a top performer through Amazon and also selling at Walmart, Smyths Toys in Europe and other retailers.

C. **GOMO** - This is NEXTSPORT's newest brand and is quickly becoming a top selling brand in the youth ride-on category. Some of the items in the GOMO line consist of balance bikes, 3-wheel scooters, scoot boards that are sold under licensing agreements with Disney, Paw Patrol and others. This line is sold at Walmart, Amazon, Target, and many other retailers.

D. **CITY GLIDE** – This is NEXTSPORT's commuter scooter brand equally appealing to the young and adult riders. City Glide's sells in specialty sporting good stores such as BIG 5 as well as direct via Amazon.

6. NEXTSPORT's sales are driven by an in-house salesforce along with industry proven representative firms focusing on key retailers such as Target, Walmart and Sam's Club. NEXTSPORT has long term strategic relationship with top traditional retailers such as Target, Walmart, Academy Sports, Fred Meyer, Smyths Toys in Europe and many others in the U.S., Europe and Canada. NEXTSPORT has continued to expand its worldwide omnichannel retailer footprint

Case 22-40569   Doc# 9   Filed: 06/13/22   Entered: 06/13/22 18:13:18   Page 3 of 70

KORNFIELD
NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600  Oakland, California 94612

year over year, continuing to grow retailer count and expanding consumer demand. NEXTSPORT products and brands can be found at over 6,000 mass retail locations as well as 500+ specialty's shops spanning the U.S.A., Canada, Europe, the United Kingdom and Australia.

7. In order to drive NEXTSPORT's growth, NEXTSPORT developed and maintained long standing and excellent partnerships with top quality manufacturing suppliers in mainland China. While travel to China to supervise production has been difficult, NEXTSPORT does have local representation. For the past 15 years, Tristate Far East Corp has been NEXTSPORT's partner. Tristate Far East Corp has been NEXTSPORT's quality control representatives during production.

8. NEXTSPORT maintains inventory at third-party logistics warehouses throughout the world. The primary locations are:

- JBS Logistics – our main logistic warehouses based in Southern California with a 15-year relationship with NEXTSPORT.
- JAS (TIGERS) – their warehouses in Rotterdam, United Kingdom and Australia with an 8-year relationship.
- Lane Sales Canada – Canadian based warehouse which relationship started in 2020.

In addition, NEXTSPORT has inventory located in Amazon fulfillment centers in the US, Europe and Canada.

**Why NEXTSPORT Filed for Chapter 11 Protection**

9. Over the years, NEXTSPORT has experienced steady revenue growth driven by retailer expansion and online sales. Even during the COVID-19, (2020) pandemic, NEXTSPORT achieved significant revenue and profit growth. 2020 top line sales and EBITDA showed a significant improvement over prior year. In 2020, revenue was $23,378,000 with a bottom-line profit of $1,758,000. For 2021, NEXTSPORT experienced a complete reversal. 2021 proved to be NEXTSPORT'S most difficult year. 2021 revenue was $19,030,000 with a bottom-line loss of $3,220,000.

10. The reversal in NEXTSPORT'S revenue was due to several factors. All these factors hit at the same time and left the company with no choice but to seek chapter 11 protection.

KORNFIELD

NYBERG, BENDES,
KUHNER & LITTLE, P.C.

1970 Broadway, Suite 600   Oakland, California 94612

11.     NEXTSPORT'S cost for product and freight increased dramatically. Freight cost, especially ocean freight increased by a 5X factor from $4,000 to $20,000. This factor alone consumed the company's cash reserves. Our product costs went up by 15 to 20%. We were not able to increase prices as retailers did not accept any of these increased costs or revisions to our pricing.

12.     In addition, well documented supply chain disruption took place towards the second half of the year with many shipments missing our key holiday season. NEXTSPORT is cyclical as is every other toy company and missing the critically important Q4 sales season created a dramatic loss.  Most of the containers arrived at the warehouses after the completion of holiday sales season. This caused a massive cash shortage and to NEXTSPORT now holding millions of dollars in inventory. Being a seasonal business sale from this inventory will not materialize fully until Q4 of 2022.

13.     NEXTSPORT's inventory position was better in Europe, however, leading to the holiday season Amazon turned off all European sales due to product labeling issues. Amazon claimed that NEXTSPORT was not compliant with CE product marking, when in fact NEXTSPORT was compliant.  Ultimately, Amazon agreed they were not correct in their assessment and reinstated the account but several months of key seasonal sales were lost to NEXTSPORT.

14.     For 2022, NEXTSPORT has achieved increased retailer presence. Target has added additional products, as has Walmart. We continue with our highly profitable seasonal Walmart PDQ (high traffic area displays) promotions. New items have been added to the Walmart line and 2022/2023 season commitments from key retailers have been received.

15.     A key priority now for NEXTSPORT is to secure short-term financing in order to fund all of the orders and commitments we now have from top retailers in both the US and in Europe primarily Walmart.

**Chapter 11 Exit Strategy**

16.     Through this Chapter 11 case, NEXTSPORT will pursue a multiprong strategy. NEXTSPORT will attempt to generate new and additional sales, operate through Q4 of 2022 which will encompass its holiday season and then be in a position to formulate a plan of reorganization.

In addition, NEXTSPORT will pursue a capital infusion. Finally, NEXTSPORT will continue to explore possible sale of its business and/or exit financing.

**Need for First Day Motions**

17.     The Debtor has filed five (5) first day motions relating to its transition into Chapter 11. I believe that approval of each First Day Motion is a crucial element of the Debtor's reorganization efforts. I have reviewed each of the first day motions set forth below, and I believe the Debtor will suffer immediate and irreparable harm absent the ability to obtain the relief requested in the first day motions. All the factual recitations in the First Day Motions are true and correct to the best of my knowledge.

**Employee Motion**

18.     The Debtor currently has twelve (12) employees which are the heart of its business operations. To minimize the impact of its Chapter 11 bankruptcy case on its employees, the Debtor filed a motion of debtor pursuant to 11 U.S.C. §§105(a), 363(b) and 507 and Federal Rule of Bankruptcy Procedure 6003 and 6004 for authority to (i) pay pre-petition wages, salaries, employee benefits and other compensation, (ii) maintain employee benefit programs and pay related administrative obligations; and (iii) authorize applicable banks and other financial institutions to honor and process related checks and transfers (the "Employee Motion").

19.     The Employee Motion asks for authority to continue to administer, the Debtor's business discretion, the employee compensation and benefit program in the ordinary course post-petition. Employee compensation and benefits programs include among other things, employee compensation obligations, paid leave, health insurance plans, COBRA benefits, life insurance, workers compensation insurance, short-term disability, and a 401k Plan, each as further described below in the Employee Motion.

20.     As of the petition date, the Debtor owes approximately $47,842.67 in connection with the employee compensation and benefit programs (the "Pre-Petition Employee Obligations"). The Employee Motion requests authority to pay an aggregate amount not to exceed $50,000.00 and pre-petition employee obligations.

1970 Broadway, Suite 600   Oakland, California 94612

NYBERG, BENDES, KUHNER & LITTLE, P.C.

KORNFIELD

21.     Attached hereto as **Exhibit A** is a breakdown of the employees and the amount of prepetition compensation which is owed to each of the employees. The amount owed to each of the employees and sought to be paid pursuant to the Employee Motion all fall below the priority amount of $13,650.00 set forth in 11 U.S.C. Section 507.

### Cash Collateral Motion

22.     The Debtor has also filed a motion of debtor for order authorizing use of cash collateral pursuant to 11 U.S.C. Section 363 (the "Cash Collateral Motion").  As of the petition date, the Debtor will have approximately $97,399 in its bank accounts, $308,000 in outstanding accounts receivable and $12,956,000 in inventory (collectively the "Cash Collateral").  While the Debtor currently generates over $750,000 in accounts receivable each month, the delay and payment by its clients through the standard billing and payment cycle makes access to this cash collateral crucial to the Debtor's continued business operation.

23.     Set forth on **Exhibit B**, is a list of parties who are believed to hold perfected security interest in the Debtor's cash collateral.  **Exhibit B** also sets forth what each respective secured party has a lien against and the approximate balance owing to each secured creditor. Also set forth in the Cash Collateral Motion is a chart identifying the total value of collateral that secures the liens. The total amount of secured claims is $2,550,124 and the total value of the collateral is $13,305,850. Attached hereto as **Exhibit C**, are copies of the UCC-1 filings of the various secured creditors.

24.     The Debtor proposes in order to provide adequate protection to the secured creditors, post-petition replacement liens in the same amounts and priority as the secured parties existing rights in the cash collateral (as may later be determined in this case) with the exception that no replacement lien will be given in any new inventory and/or receivables generated as a direct result of any court approved debtor-in-possession financing.

25.     Attached hereto as **Exhibit D** is a proposed budget for the Debtor's operations through July 1, 2022 (the "Cash Collateral Budget").

26.     As can be seen from the Cash Collateral Budget, the Debtor needs to use $495,543 of cash collateral during the initial period of its Chapter 11 case.  During that same period, the

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.

1970 Broadway, Suite 600   Oakland, California 94612

Debtor will generate or collect new receivables of $476,000.

27.     If the Cash Collateral Motion is approved by the Court, the Debtor will limit its use of the cash collateral to the line item set forth in the Cash Collateral Budget, with the permitted variance not to exceed the amount of each category by ten percent (10%) per line item. I understand that before the Debtor will be allowed to pay an amount in excess of this permitted variance per line item, the Debtor will be required to first get a further order of this court.

28.     I believe allowing the use of cash collateral proposed in the Cash Collateral Budget will preserve the position of the secured parties who have security interest in the Cash Collateral, while allowing the Debtor to continue its necessary operations and providing the necessary time to formulate and implement a plan of reorganization in its Chapter 11 case.

## Shopify Motion

29.     The Debtor has filed motion for approval to continue its online payment service agreement with Shopify ("Shopify"). The Debtor is a party to an agreement with Shopify, a copy of which is attached hereto as **Exhibit E** Shopify provides an online platform for the retail sale of the Debtor's product. The platform provides the customer to access information on the various products the Debtor sells and provides the customer with various options to pay for those products such as Apple Pay, Google Pay and Facebook Pay. The Debtor is charged a subscription fee, transaction fee based on the value of sales on payments other than those processed through Shopify Payments, and other fees. The Debtor is current as to all fees owed to Shopify.

30.     The Debtor has seven (7) Shopify online stores, five (5) for resellers in different regions of the country and two (2) for two (2) direct to customer brands. The basic charges are as follows: (1) $312 paid approximately every thirty (30) days; (2) transaction charges of 2.9% plus $0.30 for domestic credit card sales and 3.9% plus $0.30 for foreign cards which are paid by being deducted from the payments to the Debtor; and (3) each channel has an approximate $50 per month app subscription fee that is paid directly from the Debtor's bank account at Bank of the West.

31.     If the Debtor was unable to continue, even for a limited time, loss of sales would be material. In addition, the Debtor would suffer a loss of customer goodwill as a result of any loss of

KORNFIELD

NYBERG, BENDES,
KUHNER & LITTLE, P.C.

1970 Broadway, Suite 600   Oakland, California 94612

ability to continue with Shopify.

32. The Debtor believes that fees Shopify charged for standard fees charged by the Shopify for a merchant of equivalent size.

33. The Shopify agreement is important to the Debtor's ongoing business. Because of the commencement of this bankruptcy case, the Debtor might be unable to find an alternative agreement from an alternative source. Shopify does not have any significant risk or loss by continuing such service, as the processing fees are deducted from funds received for each transaction or paid directly form the Debtor's bank account.

**Bank Account Motion**

34. The final First Day Motion is the motion of Debtor for order authorizing continued use of its prepetition bank accounts (the "Bank Accounts Motion").

35. The Debtor's prepetition bank accounts are maintained at Wells Fargo Bank, Bank of the West and Royal Bank of Canada. The Debtor also has a Paypal Account (the "Accounts").

36. Requiring the Debtor to close its prepetition accounts would adversely impact its accounting systems, cost considerable disruption in the operation of the business, and adversely impact the Debtor's employees and suppliers.

37. The Accounts are an important part of the Debtor's cash management system.

38. One immediate reason to maintain the Accounts is that the Debtor's next ordinary payroll is scheduled for June 17, 2022, just a few days after filing of this Chapter 11 case. The Debtor would not be able to close its existing accounts and open new accounts and obtain checks in time for the next payroll run.

39. Additionally, the Accounts allow for the processing payment by ACH and direct deposits methods and those methods of payments will be disruptive by the requirement to close the Accounts.

40. If the Bank Accounts Motion is granted, the Debtor will monitor the Accounts to make sure prepetition payments are not honored by the bank. The Debtor will work hard with the bank to identify those obligations that should be allowed, if the related Employee Motion is granted,

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.

1970 Broadway, Suite 600   Oakland, California 94612

and to ensure that any other outstanding payments are not honored prepetition.  The Debtor will also request the bank account modify the signature card to provide that the Accounts are DIP accounts.

41.     Based upon my knowledge of the Debtor's operations and on the information contained in this declaration, I believe that the relief sought in the First Day Motions is necessary for the Debtor to effectuate a smooth transition into Chapter 11, to avoid immediate and irreparable harm to its business, and is in the best interests of the Debtor's creditors, estate and other stakeholders.

**Borrowing Motion**

42.     As set forth in the Borrowing Motion, the Debtor has an immediate cash need that can only be met by borrowing funds. The cash is need to fund deposits for the production of product for new orders that have been placed by Walmart. The Debtor has arranged for a loan from Mike Nelson. Mr. Nelson has agreed to fund a Debtor-in-Possession loan of $500,000. The loan will fund in two tranches. The first tranche of $150,000 will fund upon entry of an order of this court approving the borrowing. The Second tranche of $350,000 will fund on or around July 16, 2022. The loan will bear interest at the rate of 22.5% per annum. The loan will be secured by a first priority lien on the new product and proceeds thereof.  A copy of the Debtor-In-Possession Loan and Security Agreement is attached hereto as **Exhibit F**.

43.     NEXTSPORT contacted eight (8) prospective lenders about providing financing to it either pre-petition or post-petition. NEXTSPORT was unsuccessful in obtaining.

- BIZCAP
- Openroad Holdings
- Pacifica Business Advisors
- Riveron
- Legalist
- Crossroads Financial
- Sallyport Commercial Finance, LLC
- Rainstar Capital Group

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 13th day of June, 2022 at Oakland, California.


/s David Lee
David Lee

# EXHIBIT A

## INFORMATION

| | |
|---|---|
| **Company Code** | DLO |
| **Company Name** | Nextsport, Inc. |
| **Year** | 2022 |
| **Period** | 24 |
| **Run Number** | 01 |
| **Reference No** | NCT3-DLO20222401 |
| **Total Amount** | $47,942.67 |
| **Invoice No** | |
| **Due Date** | |
| **Pay Date** | 06/17/2022 |
| **End Date** | 06/12/2022 |

## OVERVIEW

| CHARGES | PERCENT OF TOTAL | AMOUNT |
|---|---|---|
| Gross Wages | 82.04% | $39,337.94 |
| Service Fee (Net of Taxes) | 1.69% | $808.83 |
| Social Security | 5.09% | $2,438.94 |
| Medicare | 1.19% | $570.40 |
| FUTA | 0.01% | $2.84 |
| SUI | 0.09% | $44.88 |
| Employee Adjustments | 9.81% | $4,702.69 |
| Employer Adjustments | 0.03% | $13.95 |
| Sub Total | 99.95% | $47,920.47 |
| Ancillary Product Fees | 0.05% | $22.20 |
| Total | 100.00% | $47,942.67 |

## EMPLOYEE DETAILS

| NAME | FILE# | WC CODE | GROSS |
|---|---|---|---|
| BRADSHAW, TAYLER | 000067 | 8810CA | $2,346.16 |
| BROOKEY, KYLE | 000062 | 8742NC | $4,615.39 |
| CUARTAS, THOMAS | 000065 | 8810CA | $3,923.08 |
| DEULOFEU, JULIO | 000052 | 8871ID | $5,769.24 |
| DUA, EDWARD | 000051 | 8810CA | $0.00 |
| JONES, DEREK | 000053 | 8742CA | $4,807.70 |
| LEE, DAVID | 000054 | 8810CA | $9,230.77 |
| MANTILLA, LESSLY | 000061 | 8810CA | $3,076.94 |
| RAFOLS, HALEY | 000069 | 8742NC | $2,403.85 |
| SILVAS, MATT | 000060 | 8742CA | $2,692.31 |
| SILVAS, RYAN | 000072 | 8810CA | $0.00 |
| WERTHAN, NANCY | 000057 | 8810CA | $472.50 |
| **Company Total** | | | $39,337.94 |

| ADJ ER401K-401K MATCH | ADJ HR-REIMBURSEMENT | TOTAL |
|---|---|---|
| $70.38 | | $2,649.58 |
| $138.46 | | $5,183.07 |
| $117.69 | | $4,435.43 |
| | $2,162.00 | $8,445.27 |
| | | $0.00 |
| | | $5,278.85 |
| $276.92 | $133.82 | $10,570.13 |
| $92.31 | | $3,478.79 |
| $72.12 | | $2,715.11 |
| $80.77 | $1,550.00 | $4,583.95 |
| | | $0.00 |
| $14.18 | | $566.34 |
| $862.83 | $3,845.82 | $47,906.52 |

# EXHIBIT B

| Creditor | Date | Description | Amount |
|---|---|---|---|
| Wells Fargo | cont. 9/14/15 cont. 10/18/20 | 2/3/11 Purchased receivables - factoring - Walmart | $0.00 |
| Amazon Capital Services, Inc. | 11/2/18 | All property in Amazon fulfillment centers, seller accounts all inventory, equipment, goods, insurance or products of the foregoing located in US | $442,109.86 |
| Barry Gilbert | 6/3/21 | All inventory or assets | $218,036.53 |
| Ed Dua | 7/2/21 | All inventory or assets | $717,500 |
| The Robert & Eva Family Trust | 7/2/21 | All inventory or assets | $205,000 |
| Quilby, Inc. (Kickfurther) | 9/30/21 | Arcade (Black, Blue/Green, Black/Red, Gold/Teal) 2600 units GOMO Balance Bike (Red/Grey, Pink, Black, Blue) 1400 units GOMO 3 Wheel Scooter (Green, Blue/Yellow, Red/Black, Black/Green, Teal/Pink) 2000 units GOMO 3 Wheel Scooter (Neochrome) 200 units Arcade + Pro Scooter (Icy Lava, Molten Lava, Ultra Lava) 1400 units Arcade + Pro Scooter (Mutant Lava) 600 units CityGlide (Blue, Red, Teal, Black) 2000 units | $167,478.00 |
| Strata Trust Company | 12/6/21 | All inventory owned by debtor | $600,000 |
| US Small Business Admin | 3/1/22 | Blanket lien | $200,000 |
| Julio Deulofeu | 6/2/22 | Blanket Lien | 0 |
| | | | $2,550,124.39 |

arehouse Liens

| Creditor | Date | Description | Amount |
|---|---|---|---|
| JBS Logistics (Formerly Logistic Edge LLC) | N/A | Inventory in its warehouse in Corona, CA | $458,845.00 |
| TIGERS INTERNATIONAL LOGISTICS BV | | Inventory in its warehouse in CK Ridderkerk, Netherlands | $61,733.00 |
| Lane Sales Canada | | Inventory in its warehouse in Guelph, Ontario, CAN | $67,859.00 |
| Tigers UK | | Inventory in its warehouse in Slough Berkshire, UK | $4,613.00 |
| TIGERS INTERNATIONAL SOLUTIONS PTY LTD. | | Inventory in its warehouse in Lynbrook, Victoria, Australia | $5,076.00 |

# EXHIBIT C

 

U200024433126



**STATE OF CALIFORNIA**
*Office of the Secretary of State, Alex Padilla*
**UCC FINANCING STATEMENT AMENDMENT (UCC 3)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File #: U200024433126 |
| Date Filed: 10/8/2020 |

| Submitter Information: | |
| --- | --- |
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Organization Name | LIEN SOLUTIONS |
| Phone Number | 800-331-3282 |
| Email Address | uccfilingreturn@wolterskluwer.com |
| Address | P.O. BOX 29071 GLENDALE, CA 912099071 |

| Amendment Action Information: | |
| --- | --- |
| Initial Financing Statement File Number | 117259605602 |
| Date Filed | 02/03/2011 |
| Amendment Action | Continuation |

Name of Secured Party of Record Authorizing This Amendment:

☐ If this Amendment is authorized by a Debtor, check this box and select the name of the Authorizing Debtor below.

| Authorizing Secured Party Name | Wells Fargo Bank, National Association |
| --- | --- |

Optional Filer Reference Information:
77100011

Page 1 o

Case: 22-40569    Doc# 9    Filed: 06/13/22    Entered: 06/13/22 18:13:18    Page 18 of 70

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Gisella Melendez
800-331-3282

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
CT LIEN SOLUTIONS
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

**DOCUMENT NUMBER: 50961920002**
**FILING NUMBER: 15-74847401**
**FILING DATE: 09/14/2015 11:03**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
11-7259605602

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in Item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in Item 7a or 7b, and address of Assignee in Item 7c and name of Assignor in Item 9
For partial assignment, complete Items 7 and 9 and also indicate affected collateral in Item 8

4. ☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes:        AND Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record.   ☐ CHANGE name and/or address: Complete Item 6a or 6b; and Item 7a and 7b and Item 7c   ☐ ADD name: Complete Item 7a or 7b, and Item 7c   ☐ DELETE name: Give record name to be deleted in Item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| OR | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| OR | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| OR | a. ORGANIZATION'S NAME  Wells Fargo Bank, National Association | | | |
|---|---|---|---|---|
| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
CA-0-49863990-50468447

FILING OFFICE COPY

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

CT LIEN SOLUTIONS
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 27822180002
FILING NUMBER: 11-7259605502
FILING DATE: 02/03/2011 11:29
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Nextsport, Inc. | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1480 64th Street, Suite 160 | Emeryville | CA | 94608 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | Corporation | CA | ☑ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Wells Fargo Bank, National Association | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 301 South College St.-9th Fl.-Mail Code D1053-091 | Charlotte | NC | 28202 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

See Attachment(s)

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☑ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
CA-0-44399881

FILING OFFICE COPY

All of the "Purchased Assets" purchased by Purchaser from Seller as set forth and described on the UCC Financing Statement Addendum attached hereto and made part of this Financing Statement.

## UCC FINANCING STATEMENT ADDENDUM

SELLER/DEBTOR: Nextsport, Inc.

PURCHASER/SECURED PARTY: Wells Fargo Bank, National Association

The "Purchased Assets" shall mean the following assets and properties purchased by Wells Fargo Bank, National Association, a national banking association, as purchaser (together with any successors and assigns, "Purchaser") from Nextsport, Inc., a California corporation, as seller (together with any successors and assigns, "Seller"), pursuant to the Receivables Purchase Agreement, dated as of October 5, 2010, by and between Seller and Purchaser (as the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced, the "Receivables Purchase Agreement"):

1.  all accounts owing and payable to Seller by a Buyer arising pursuant to the sale by Seller of goods or services in the ordinary course of business to such Buyer ("Receivables");

2.  with respect to any Receivable, all of the Seller's interests in and to: (a) all rights, but not any obligations, under all related Contracts and other Related Assets with respect to such Receivable; (b) all documents, instruments and chattel paper arising pursuant to or in connection with such Receivable; (c) all inventory and goods (including returned, repossessed or reclaimed inventory or goods), if any, the sale of which gave rise to such Receivable or otherwise representing or evidencing, such Receivable (including, without limitation, any assumed names, fictitious names or d/b/a names, including, without limitation, "Fashion Avenue Knits") and including any rights to such inventory and goods; (d) all security deposits and property subject to security interests or liens, and all guarantees, letters of credit, banker's acceptances, letter-of-credit rights, supporting obligations and other agreements or arrangements of whatever character from time to time, supporting or securing payment of such Receivable and including all rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party; (e) all insurance policies, and all claims thereunder related to such Receivable or other Related Assets, and including all rights against carriers of the inventory and goods related thereto; (f) all commercial tort claims or any other claims relating to any Receivable or any other Related Assets; (g) all books and records related to such Receivable, including the Records; and (h) all Collections in respect of, and other proceeds of, any of the foregoing (collectively, the "Related Assets"); and

3.  all proceeds of the foregoing, in any form, including insurance proceeds and all claims against third parties for loss or damage to or destruction of or other involuntary conversion of any kind or nature of any or all of the foregoing.

As used in this Addendum, the following terms shall have the following meanings:

"Buyer" shall mean Wal-Mart Stores, Inc., a Delaware corporation, and such of its affiliates as Purchaser may in writing identify to Seller as a Buyer from time to time, together with its and their successors and assigns.

1792206.1

UCC FINANCING STATEMENT ADDENDUM

SELLER/DEBTOR: Nextsport, Inc.

PURCHASER/SECURED PARTY: Wells Fargo Bank, National Association

"Collections" shall mean, with respect to any Receivable, all funds which are received by Purchaser or Seller in payment of any amounts owed.

"Contract" shall mean a contract between Seller and any Buyer, or an invoice sent or to be sent by Seller, pursuant to or under which a Receivable shall arise or be created, or which evidences a Receivable.

"Records" shall mean all of Seller's present and future books of account of every kind or nature, purchase and sale agreements, invoices, sales orders, credit memos, ledger cards, bills of lading and other shipping evidence, statements, correspondence, and other data relating to the Receivables or any Related Assets or any Buyer, together with the software and other medium in or on which the foregoing are stored.

Case: 22-40569   Doc# 9   Filed: 06/13/22   Entered: 06/13/22 18:13:18   Page 23 of 70

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)**<br>Lien Solutions<br>800-331-3282 | |
| **B. E-MAIL CONTACT AT FILER (optional)** | |
| **C. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>Lien Solutions<br>P.O. Box 29071<br>Glendale, CA 91209-9071<br>USA | **DOCUMENT NUMBER: 74937090002**<br>**FILING NUMBER: 18-76829650**<br>**FILING DATE: 11/15/2018 08:01**<br><br>IMAGE GENERATED ELECTRONICALLY FOR XML FILING<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

| **1a. INITIAL FINANCING STATEMENT FILE NUMBER**<br>16-7537994849 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: <u>Attach</u> Amendment Addendum (Form UCC3Ad) <u>and</u> provide Debtor's name in item 13 |
|---|---|

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, <u>and</u> address of Assignee in item 7c <u>and</u> name of Assignor in item 9
For partial assignment, complete items 7 and 9 <u>and</u> also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**
Check <u>one</u> of these two boxes:    **AND** Check <u>one</u> of these three boxes to:
This Change affects ☐ Debtor <u>or</u> ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; <u>and</u> item 7a and 7b <u>and</u> item 7c    ☐ ADD name: Complete item 7a or 7b, <u>and</u> item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only <u>one</u> name (6a or 6b)

| | | | | |
|---|---|---|---|---|
| **6a. ORGANIZATION'S NAME** | | | | |
| **OR** **6b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only <u>one</u> name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | | | | |
|---|---|---|---|---|
| **7a. ORGANIZATION'S NAME** | | | | |
| **7b. INDIVIDUAL'S SURNAME** | | | | |
| **OR** **INDIVIDUAL'S FIRST PERSONAL NAME** | | | | |
| **INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | | | | **SUFFIX** |

| **7c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|

**8.** ☑ **COLLATERAL CHANGE:** <u>Also</u> check <u>one</u> of these four boxes: ☑ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:
The Collateral is all of the following property the debtor now owns or may acquire in the future: (i) all inventory at any time stored for the debtor or the debtor's affiliate accounts in Amazon fulfillment centers, wherever found, (ii) any right, title or interest in the debtor's Seller Account, as well as any other Amazon seller accounts affiliated with the debtor, (iii) all Accounts, Chattel Paper, Deposit Accounts, Documents, Instruments, Investment Property, or Payment Intangibles, (iv) all Equipment, Goods, Inventory and other tangible personal property located in the United States, (v) any books and records pertaining to the Collateral, and (vi) any insurance, proceeds or products of the foregoing.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only <u>one</u> name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | | | | |
|---|---|---|---|---|
| **a. ORGANIZATION'S NAME**<br>Amazon Capital Services, Inc. | | | | |
| **OR** **b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

**10. OPTIONAL FILER REFERENCE DATA:**
CA-0-67360783-56150233- Debtor: NEXTSPORT,INC.

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Lien Solutions
800-331-3282

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071
USA

**DOCUMENT NUMBER: 74614790002**
**FILING NUMBER: 18-76808946**
**FILING DATE: 11/02/2018 04:34**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| 16-7537994849 | |

**2.** ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ PARTY INFORMATION CHANGE:
Check one of these two boxes:      AND Check one of these three boxes to:
This Change affects ☑ Debtor or ☐ Secured Party of record.      ☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c      ☐ ADD name: Complete item 7a or 7b, and item 7c      ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | Nextsport, Inc. | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | NEXTSPORT,INC. | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 106 Linden St., Suite 201 | Oakland | CA | 94607 | USA |

**8.** ☐ COLLATERAL CHANGE: Also check one of these four boxes:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | Amazon Capital Services, Inc. | | | |
| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
CA-0-67190079-56087695- Debtor: NEXTSPORT,INC.

**FILING OFFICE COPY**

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Gisella Melendez |
| 800-331-3282 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| |

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| CT LIEN SOLUTIONS |
| 2727 ALLEN PARKWAY |
| HOUSTON, TX 77019 |
| USA |

**DOCUMENT NUMBER: 55455680002**
**FILING NUMBER: 16-7537994849**
**FILING DATE: 07/23/2016 09:45**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | Nextsport, Inc. | | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| | 106 Linden St., Suite 201 | Oakland | CA | 94607 | | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | | | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | Amazon Capital Services, Inc. | | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| | 2201 Westlake Ave | Seattle | WA | 98121 | | USA |

4. COLLATERAL: This financing statement covers the following collateral:
(i) All inventory at any time stored for you in Amazon fulfillment centers, wherever found, (ii) any right, title or interest in your Seller Account, as well as any other seller accounts administered by Amazon Services LLC you may use, (iii) all Accounts, Chattel Paper, Deposit Accounts, Documents, Instruments, Investment Property, or Payment Intangibles, (iv) all Equipment, Goods, Inventory and other tangible personal property located in Alaska, Arizona, California, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Maryland, Massachusetts, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New York, North Carolina, North
Dakota, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, Washington, West Virginia, or Wisconsin, (v) any books
and records pertaining to the Collateral, and (vi) any insurance, proceeds or products of the foregoing.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative |
|---|

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor |
|---|

| 8. OPTIONAL FILER REFERENCE DATA: |
|---|
| CA-0-54951774-51893473 |

**FILING OFFICE COPY**

 

U210052493329



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File #: U210052493329 |
| Date Filed: 6/3/2021 |

Submitter Information:

| | |
| --- | --- |
| Contact Name | Sarah Borrey |
| Organization Name | Law Office of Sarah H. Bo |
| Phone Number | (408) 310-9062 |
| Email Address | sarah@borreylaw.com |
| Address | SARAH H. BORREY |
| | 741 LILLY LANE |
| | MORGAN HILL, CA 95037 |

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| Nextsport Inc. | 106 Linden Street, Suite 201 Oakland, CA 94607 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| Barry Gilbert | 8 Snowberry Court San Rafael, CA 94901 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
Inventory, (Or assets) owned by the Company during the term of note entered into May 7, 2021 up to $200,000.

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:
Not Applicable

Select an additional alternate Financing Statement type:
Not Applicable

Select an alternative Debtor/Secured Party designation for this Financing Statement:
Not Applicable

Optional Filer Reference Information:

Miscellaneous Information:

Search to Reflect:

☐ Order a Search to Reflect

Case: 22-40569   Doc# 9   Filed: 06/13/22   Entered: 06/13/22 18:13:18   Page 27 of 70

 

U210061949329



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File #: U210061949329
Date Filed: 7/2/2021

---

Submitter Information:

Contact Name

Organization Name

Phone Number

Email Address

Address                                     None

---

Debtor Information:

| Debtor Name | Mailing Address |
|---|---|
| Nextsport Inc. | 106 Linden Street, Suite 201 Oakland, CA 94607 |

---

Secured Party Information:

| Secured Party Name | Mailing Address |
|---|---|
| Edward M Dua | 106 Linden Street, Suite 201 Oakland, CA 94607 |

---

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
The inventory, (Or assets) owned by the Company during the term of the Promissory Note.

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:
Not Applicable

Select an additional alternate Financing Statement type:
Not Applicable

Select an alternative Debtor/Secured Party designation for this Financing Statement:
Not Applicable

Optional Filer Reference Information:

Miscellaneous Information:

Search to Reflect:

☐ Order a Search to Reflect

Case: 22-40569   Doc# 9   Filed: 06/13/22   Entered: 06/13/22 18:13:18   Page 28 of 70

 

U210061954026



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File #: U210061954026 |
| Date Filed: 7/2/2021 |

Submitter Information:

| | |
| --- | --- |
| Contact Name | Sarah Borrey |
| Organization Name | Law Office of Sarah H. Bo |
| Phone Number | (408) 310-9062 |
| Email Address | sarah@borreylaw.com |
| Address | 741 LILLY LANE MORGAN HILL, CA 95037 |

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| Nextsport Inc. | 106 Linden Street, Suite 201 Oakland, CA 94607 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| The Robert and Ava Family Trust | Robert Gold 4923 Floresta Ct. Westlake Village, CA 91362 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
The inventory, (Or assets) owned by the Company during the term of the note.

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:
Not Applicable

Select an additional alternate Financing Statement type:
Not Applicable

Select an alternative Debtor/Secured Party designation for this Financing Statement:
Not Applicable

Optional Filer Reference Information:

Miscellaneous Information:

Search to Reflect:

☐ Order a Search to Reflect

Case: 22-40569   Doc# 9   Filed: 06/13/22   Entered: 06/13/22 18:13:18   Page 29 of 70

 



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| :---: |
| **-FILED-** |
| File #: U210089569739 |
| Date Filed: 9/30/2021 |

Submitter Information:

| | |
| --- | --- |
| Contact Name | Jenna Vega |
| Organization Name | Ouiby, Inc. |
| Phone Number | (716) 939-1550 |
| Email Address | jenna@kickfurther.com |
| Address | PO BOX 21584<br>BOULDER, CO 80308 |

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| Nextsport, Inc. | 106 Linden St. Ste 201<br>None<br>Oakland, CA 94607 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| Ouiby, Inc. | PO BOX 21584<br>BOULDER, CO 80308 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
This filing shall cover the following consignment inventory and proceeds from the same

Arcade (Black, Blue/Green, Black/Red, Gold/Teal)       2600 units
GOMO Balance Bike (Red/Grey, Pink, Black, Blue)       1400 units
GOMO 3 Wheel Scooter (Green, Blue/Yellow, Red/Black, Black/Green, Teal/Pink) 2000 units
GOMO 3 Wheel Scooter (Neochrome) 200   units
Arcade + Pro Scooter (Icy Lava, Molten Lava, Ultra Lava)       1400 units
Arcade + Pro Scooter (Mutant Lava)    600   units
CityGlide (Blue, Red, Teal, Black)       2000 units

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:
Not Applicable

Select an additional alternate Financing Statement type:
Not Applicable

Select an alternative Debtor/Secured Party designation for this Financing Statement:
Not Applicable

Optional Filer Reference Information:
UCC1 - 6285

Miscellaneous Information:

Search to Reflect:

Case: 22-40569    Doc# 9    Filed: 06/13/22    Entered: 06/13/22 18:13:18    Page 30 of 70

☐ Order a Search to Reflect

 

U210107730218



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File #: U210107730218 |
| Date Filed: 12/6/2021 |

| Submitter Information: | |
| --- | --- |
| Contact Name | Sarah Borrey |
| Organization Name | Law Office of Sarah H. Borrey |
| Phone Number | (408) 310-9062 |
| Email Address | sarah@borreylaw.com |
| Address | 15283 BRYSON COURT MORGAN HILL, CA 95037 |

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| Nextsport Inc. | Ed Dua<br>106 Linden Street, Suite 201<br>Oakland, CA 94607 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| Strata Trust Company Custodian FBO Joseph DeLuca | Joseph DeLuca<br>3559 South Silver Springs Road<br>Lafayette, CA 94549 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
All inventory owned by Debtor.

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:
Not Applicable

Select an additional alternate Financing Statement type:
Not Applicable

Select an alternative Debtor/Secured Party designation for this Financing Statement:
Not Applicable

Optional Filer Reference Information:

Miscellaneous Information:

Search to Reflect:

☐ Order a Search to Reflect

Page 1 of

Case: 22-40569    Doc# 9    Filed: 06/13/22    Entered: 06/13/22 18:13:18    Page 32 of 70

 

U220168966939



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File #: U220168966939 |
| Date Filed: 3/1/2022 |

---

Submitter Information:

| | |
| --- | --- |
| Contact Name | CORPORATION SERVICE COMPANY |
| Organization Name | CSC |
| Phone Number | 18008585294 |
| Email Address | SPRFiling@cscglobal.com |
| Address | 801 ADLAI STEVENSON DR SPRINGFIELD, IL 62703 |

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| NEXTSPORT INC. | 106 LINDEN ST STE 201 OAKLAND, CA 94607 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| U.S. SMALL BUSINESS ADMINISTRATION | 1545 HAWKINS BLVD, SUITE 202 EL PASO, TX 79925 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto. EXEMPT Per California Government Code Section 6103 PLEASE EXPEDITE  205159 9107

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

Select an alternative Debtor/Secured Party designation for this Financing Statement:

Optional Filer Reference Information:
1091713

Case: 22-40569    Doc# 9    Filed: 06/13/22    Entered: 06/13/22 18:13:18    Page 33 of 70

 



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT AMENDMENT (UCC 3)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File No.: U220199003328
Date Filed: 6/2/2022

| Submitter Information: | |
|---|---|
| Contact Name | Sarah Borrey |
| Organization Name | Law Office of S. Borrey |
| Phone Number | (408) 310-9062 |
| Email Address | sarah@borreylaw.com |
| Address | 2667 Bill Collins Road Tryon, NC 28782 |

| Amendment Action Information: | |
|---|---|
| Initial Financing Statement File Number | U220198816130 |
| Date Filed | 06/01/2022 |
| Amendment Action | Secured Party Amendment |
| Secured Party Action | Edit Secured Party |

Edit Secured Party:

| Secured Party Name | Mailing Address |
|---|---|
| *Changed From:* <br> JULIO M DEULOFEU <br> *Changed To:* <br> JULIO R DEULOFEU | *Changed From:* <br> 106 LINDEN STREET, SUITE 201 <br> OAKLAND, CA 94607 <br> *Changed To:* <br> 9317 W PANDION COURT <br> GARDEN CITY, ID 83714 |

Name of Secured Party of Record Authorizing This Amendment:

☒ If this Amendment is authorized by a Debtor, check this box and select the name of the Authorizing Debtor below.

Authorizing Debtor Name        NEXTSPORT INC.

Optional Filer Reference Information:
address update

Miscellaneous Information:

# EXHIBIT D

| | Week 24 | | Week 25 | | Week 26 | |
|---|---|---|---|---|---|---|
| | Jun-11 - Jun-17 | | Jun-18 - Jun-24 | | Jun-25 - Jul-01 | |
| **Cash Receipts** | | | | | | |
| Amazon | $ | 17,649.22 | $ | 116,000.00 | $ | 22,500.00 |
| Dealers | $ | 16,609.00 | $ | 16,609.00 | $ | 16,609.00 |
| FOB/International | $ | - | $ | - | $ | - |
| Other Retailers | $ | 18,280.60 | $ | 998.80 | $ | 4,243.20 |
| Smyths | $ | 45,584.00 | $ | - | $ | - |
| Target | $ | 856.24 | $ | 858.43 | $ | 1,239.93 |
| Walmart | $ | 1,166.54 | $ | 53,931.39 | $ | 136,460.16 |
| Website | $ | 2,250.00 | $ | 2,250.00 | $ | 2,250.00 |
| Loans / Funding | $ | 150,000.00 | $ | - | $ | - |
| **Total Cash Receipts** | $ | 252,395.60 | $ | 190,647.62 | $ | 183,302.28 |
| **Cost of Goods Sold** | | | | | | |
| Manufacturing | $ | 173,887.06 | $ | 97,371.90 | $ | 28,980.21 |
| Ocean Freight | $ | 15,000.00 | $ | 15,000.00 | $ | - |
| Product Testing | $ | - | $ | - | $ | 304.66 |
| Quality Control: Tri-State | $ | - | $ | - | $ | - |
| Shipping | $ | 10,237.63 | $ | - | $ | - |
| Warehousing New Charges | $ | 30,000.00 | $ | - | $ | - |
| Warehousing Past Due | $ | - | $ | 40,000.00 | $ | - |
| PDQ Project Costs | $ | - | $ | - | $ | - |
| **Total Cost of Goods Sold** | $ | 214,124.69 | $ | 152,371.90 | $ | 29,284.87 |
| **Expenses** | | | | | | |
| Advertising Expense | $ | 1,954.92 | $ | 11,600.00 | $ | 3,750.00 |
| Bank Service Charges | $ | 102.48 | $ | 87.91 | $ | 2,201.54 |
| Business License & Fees | $ | 662.48 | $ | - | $ | 350.00 |
| Communications | $ | 770.86 | $ | - | $ | 890.54 |
| Dues and Subscriptions | $ | - | $ | 23.99 | $ | - |
| E Commerce Logistic Exps | $ | - | $ | - | $ | 180.00 |
| General & Administrative Exps | $ | 151.99 | $ | 30.00 | $ | 5,879.00 |
| Insurance | $ | 4,498.60 | $ | - | $ | - |
| Marketing Expense | $ | 2,002.00 | $ | - | $ | 12,538.99 |
| Website | $ | 80.00 | $ | 44.98 | $ | 305.92 |
| Office Supplies | $ | - | $ | - | $ | 1,261.34 |
| Product Development | $ | - | $ | - | $ | 1,679.00 |
| Professional & Consulting Services | $ | 350.00 | $ | - | $ | 15,610.00 |
| Salaries & Bonus | $ | 46,758.85 | $ | - | $ | 44,709.98 |
| Selling Expense | $ | - | $ | - | $ | 3,432.03 |
| Travel | $ | 43.07 | $ | - | $ | 4,000.00 |
| **Total Expenses** | $ | 57,375.25 | $ | 11,786.88 | $ | 91,393.33 |
| **Other Payments** | | | | | | |
| Amazon Loan Payment | | | $ | 24,513.59 | | |
| Amex Payment | | | | | | |
| B of A cc Payments | | | | | | |
| Kickfurther Repayment | | | | | | |
| Loan Repayments | | | | | $ | 15,000.00 |
| Barry Gilbert | | | | | | |
| Stock Buy Backs | | | | | | |
| Target Accruals | | | | | $ | 8,416.04 |
| WF Line of Credit Payments | | | | | $ | 1,464.00 |
| **Total Other Payments** | $ | - | $ | 24,513.59 | $ | 24,880.04 |
| **Total Outgoing Payments** | $ | 271,499.94 | $ | 188,672.37 | $ | 145,558.24 |
| **Cash Available** | $ | 71,400.56 | $ | 73,375.81 | $ | 111,119.85 |

# EXHIBIT E

# Terms of Service

Table of Contents

1. Account Terms
2. Account Activation
3. Shopify Rights
4. Your Responsibilities
5. Payment of Fees and Taxes
6. Confidentiality
7. Limitation of Liability and Indemnification
8. Intellectual Property and Your Materials
9. Additional Services
10. Feedback and Reviews
11. DMCA Notice and Takedown Procedure
12. Privacy and Data Protection
13. Shopify Contracting Party
14. Term and Termination
15. Modifications
16. General Conditions

Last updated on: February 03, 2022

Welcome to Shopify! By signing up for a Shopify Account (as defined in Section 1) or by using any Shopify Services (as defined below), you are agreeing to be bound by the following terms and conditions (the **"Terms of Service"**).

As used in these Terms of Service, **"we"**, **"us"**, **"our"** and **"Shopify"** means the applicable Shopify Contracting Party (as defined in Section 13 below), and **"you"** means the Shopify User (if registering for or using a Shopify Service as an individual), or the business employing the Shopify User (if registering for or using a Shopify Service as a business) and any of its affiliates.

The services offered by Shopify under these Terms of Service include various products and services

 Log in

offered by Shopify are referred to in these Terms of Services as the "**Service(s)**". Any new features or tools which are added to the current Services will also be subject to the Terms of Service. You can review the current version of the Terms of Service at any time at https://www.shopify.com/legal/terms.

You must read, agree with and accept all of the terms and conditions contained or expressly referenced in these Terms of Service, including Shopify's Acceptable Use Policy ("**AUP**") and Privacy Policy, and, if applicable, the Supplementary Terms of Service for E.U. Merchants ("**EU Terms**"), the Shopify API License and Terms of Use ("**API Terms**") and the Shopify Data Processing Addendum ("**DPA**") before you may sign up for a Shopify Account or use any Shopify Service. Additionally, if you offer goods or services in relation to COVID-19, you must read, acknowledge and agree to the Rules of Engagement for Sale of COVID-19 Related Products.

**Everyday language summaries are provided for convenience only and appear in bold near each section, but these summaries are not legally binding. Please read the Terms of Service, including any document referred to in these Terms of Service, for the complete picture of your legal requirements. By using Shopify or any Shopify services, you are agreeing to these terms. Be sure to occasionally check back for updates.**

# 1. Account Terms

To access and use the Services, you must register for a Shopify account ("Account"). To complete your Account registration, you must provide us with your full legal name, business address, phone number, a valid email address, and any other information indicated as required. Shopify may reject your application for an Account, or cancel an existing Account, for any reason, at our sole discretion.

You must be the older of: (i) 18 years, or (ii) at least the age of majority in the jurisdiction where you reside and from which you use the Services to open an Account.

You confirm that you are receiving any Services provided by Shopify for the purposes of carrying on a business activity and not for any personal, household or family purpose.

You acknowledge that Shopify will use the email address you provide on opening an Account or as updated by you from time to time as the primary method for communication with you ("**Primary Email**

**Address**"). You must monitor the Primary Email Address you provide to Shopify and your Primary Email Address must be capable of both sending and receiving messages. Your email communications with Shopify can only be authenticated if they come from your Primary Email Address.

You are responsible for keeping your password secure. Shopify cannot and will not be liable for any loss or damage from your failure to maintain the security of your Account and password.

Technical support in respect of the Services is only provided to Shopify Users. Questions about the Terms of Service should be sent to Shopify Support.

You agree not to reproduce, duplicate, copy, sell, resell or exploit any portion of the Service, use of the Services, or access to the Services without the express written permission by Shopify.

You agree not to work around, bypass, or circumvent any of the technical limitations of the Services, use any tool to enable features or functionalities that are otherwise disabled in the Services, or decompile, disassemble or otherwise reverse engineer the Services.

You agree not to access the Services or monitor any material or information from the Services using any robot, spider, scraper, or other automated means.

You understand that your Materials may be transferred unencrypted and involve (a) transmissions over various networks; and (b) changes to conform and adapt to technical requirements of connecting networks or devices. "**Materials**" means Your Trademarks, copyright content, any products or services you sell through the Services (including description and price), and any photos, images, videos, graphics, written content, audio files, code, information, or other data provided or made available by you or your affiliates to Shopify or its affiliates.

**WHICH MEANS**

You are responsible for your Account, the Materials you upload to the Shopify Service and the operation of your Shopify Store. If you violate Shopify's terms of service we may cancel your service access. If we need to reach you, we will communicate via the Primary Email Address.

# 2. Account Activation

### 2.1 Store Owner

Subject to Section 2.1.2, the person signing up for the Service by opening an Account will be the contracting party ("**Store Owner** ") for the purposes of our Terms of Service and will be the person who is authorized to use any corresponding Account we may provide to the Store Owner in connection with the Service. You are responsible for ensuring that the name of the Store Owner (including the legal name of the company that owns the Store, if applicable) is clearly visible on the Store's website.

If you are signing up for the Services on behalf of your employer, your employer will be the Store Owner. If you are signing up for the Services on behalf of your employer, then you must use your employer-issued email address and you represent and warrant that you have the authority to bind your employer to our Terms of Service.

Your Shopify Store can only be associated with one Store Owner. A Store Owner may have multiple Shopify Stores. "**Store**" means the online store (whether hosted by Shopify or on a third party website) or physical retail location(s) associated with the Account.

## 2.2 Staff Accounts

Based on your Shopify pricing plan, you can create one or more staff accounts ("**Staff Accounts**") allowing other people to access the Account. Each Staff Account must include a full legal name and a valid email account. With Staff Accounts, the Store Owner can set permissions and let other people work in their Account while determining the level of access by Staff Accounts to specific business information (for example, you can limit Staff Account access to sales information on the Reports page or prevent Staff Accounts from changing general store settings).

The Store Owner is responsible for: (a) ensuring it's employees, agents and subcontractors, including via Staff Accounts, comply with these Terms of Service; and (b) any breach of these Terms of Service by the Store Owner's employees, agents or subcontractors. The Store Owner acknowledges and agrees that Store Owner will be responsible for the performance of all of its obligations under the Agreement, regardless of whether it sublicenses or subcontracts any such obligations to any third party, including but not limited to any affiliates or subsidiaries of Store Owner.

The Store Owner and the users under Staff Accounts are each referred to as a "**Shopify User**".

## 2.3 PayPal Express Checkout and Shopify Payments Accounts

Upon completion of sign up for the Service, Shopify will create a PayPal Express Checkout account on your behalf, using your Primary Email Address. Depending on your location, Shopify may also create a Shopify Payments account on your behalf.

You acknowledge that PayPal Express Checkout and/or Shopify Payments will be your default payments gateway(s) and that it is your sole responsibility as the Store Owner to activate and maintain these accounts. If you do not wish to keep either of the payment accounts active, it is your responsibility to deactivate them. For the avoidance of doubt, PayPal Express Checkout is a Third Party Service, as defined in Section 9.7.1 of these Terms of Service.

## 2.4 Shop Pay

Upon completion of sign up for the Service, if you have been enrolled in Shopify Payments, Shop Pay will automatically appear as an accelerated checkout option on your checkout page. If you do not wish for Shop Pay to appear on your Store, it is your responsibility to remove it by managing your accelerated checkouts in your Shopify administrative console.

If your customers have enabled Shop Pay, customers may purchase goods and services from your Shopify Store using Shop Pay.

By using Shop Pay on your Shopify Store, you agree to be bound by the Shop Pay Merchant Terms of Service, as they may be amended by Shopify from time to time. If Shopify amends the Shop Pay Merchant Terms of Service, amendments are effective as of the date of posting. Your continued use of Shop Pay on your Store after the amended Shop Pay Merchant Terms of Service are posted constitutes your agreement to, and acceptance of, the amended Shop Pay Merchant Terms of Service. If you do not agree to any changes to the Shop Pay Merchant Terms of Service, it is your responsibility to remove Shop Pay by managing your accelerated checkouts in your Shopify administrative console.

### 2.5 Apple Pay for Safari Account

Upon completion of sign up for the Service, Shopify will create an Apple Pay for Safari ("**Apple Pay**") account on your behalf, using the URL(s) and business name associated with your Account. Depending on your location, Shopify may activate your Apple Pay account on your behalf, otherwise you will be required to activate your Apple Pay account within your Account admin. If you do not wish to keep your Apple Pay account active, it is your responsibility to deactivate it. For the avoidance of doubt, Apple Pay is a Third Party Service, as defined in Section 9.7.1 of these Terms of Service. If you use an Apple Pay supported payment gateway and your customers have enabled Apple Pay on their device, customers may purchase goods and services from your Store using Apple Pay. By using Apple Pay on your Store, you are agreeing to be bound by the Apple Pay Platform Web Merchant Terms and Conditions, as they may be amended by Apple from time to time. If Apple amends the Apple Pay Platform Web Merchant Terms and Conditions, the amended and restated version will be posted here: https://www.shopify.com/legal/apple-pay. Such amendments to the Apple Pay Platform Web Merchant Terms are effective as of the date of posting. Your continued use of Apple Pay on your Store after the amended Apple Pay Platform Web Merchant Terms are posted constitutes your agreement to, and acceptance of, the amended Apple Pay Platform Web Merchant Terms. If you do not agree to any changes to the Apple Pay Platform Web Merchant Terms, de-activate your Apple Pay account and do not continue to use Apple Pay on your Store.

### 2.6 Google Pay

Upon completion of sign up for the Service, if you have been enrolled in Shopify Payments, Shopify will also create a Google Pay account on your behalf. If you do not wish to keep your Google Pay account active, it is your responsibility to deactivate it. For the avoidance of doubt, Google Pay is a Third Party Service, as defined in Section 9.7.1 of these Terms of Service. If you use a Google Pay supported payment gateway and your customers have enabled Google Pay, customers may purchase goods and services from your Store using Google Pay. By using Google Pay on your Store, you are agreeing to be bound by the Google Pay API Terms of Service, as they may be amended by Google from time to time. If Google amends the Google Pay API Terms of Service, the amended and restated version will be posted here:

https://payments.developers.google.com/terms/sellertos. Such amendments to the Google Pay API Terms of Service are effective as of the date of posting. Your continued use of Google Pay on your Store after the amended Google Pay API Terms of Service are posted constitutes your agreement to, and acceptance of, the amended Google Pay API Terms of Service. If you do not agree to any changes to the Google Pay API Terms of Service, deactivate your Google Pay account and do not continue to use Google Pay on your Store.

### 2.7 Facebook Pay

Upon completion of sign up for the Service, if you have been enrolled in Shopify Payments, Shopify will also create a Facebook Pay account on your behalf. If you do not wish to keep your Facebook Pay account active, it is your responsibility to deactivate it. For the avoidance of doubt, Facebook Pay is a Third Party Service, as defined in Section 9.7.1 of these Terms of Service.

If you use a Facebook Pay supported payment gateway and your customers have enabled Facebook Pay, customers may purchase goods and services from your Store using Facebook Pay.

By using Facebook Pay on your Store, you are agreeing to be bound by the Facebook Pay Merchant Terms and Conditions, as they may be amended by Facebook from time to time. If Facebook amends the Facebook Pay Merchant Terms and Conditions, such amendments will be effective as of the date of posting by Facebook. Your continued use of Facebook Pay on your Store after the amended Facebook Pay Merchant Terms and Conditions are posted constitutes your agreement to, and acceptance of, the amended Facebook Pay Merchant Terms and Conditions. If you do not agree to any changes to the Facebook Pay Merchant Terms and Conditions, de-activate your Facebook Pay account and do not continue to use Facebook Pay on your Store.

### 2.8 Domain Names

Upon purchasing a domain name through Shopify, domain registration will be preset to automatically renew each year so long as your Shopify Account remains active. You acknowledge that it is your sole responsibility to deactivate the auto-renewal function should you choose to do so.

#### WHICH MEANS

Only one person can be the "Store Owner", usually the person signing up for the Shopify Service. The Store Owner is responsible for the Account, is bound by these Terms of Service and is responsible for the actions of others accessing the Account. If you sign up on behalf of your employer, your employer is the Store Owner responsible for your Account.

We automatically create certain accounts for you to accept payments. You are responsible for activating and deactivating these accounts and complying with their terms, which may be with various third parties, including but not limited to PayPal, Apple Pay, Google Payment and Shop Pay. Any domain you purchase through us will automatically renew unless you opt out.

# 3. Shopify Rights

The Services have a range of features and functionalities. Not all Services or features will be available to all Merchants at all times and we are under no obligation to make any Services or features available in any jurisdiction. Except where prohibited in these Terms of Service or by applicable law, we reserve the right to modify the Services or any part thereof for any reason, without notice and at any time. Shopify does not pre-screen Materials and it is in our sole discretion to refuse or remove any Materials from any part of the Services, including if we determine in our sole discretion that the goods or services that you offer through the Services, or the Materials uploaded or posted to the Services, violate our AUP or these Terms of Service.

Verbal or written abuse of any kind (including threats of abuse or retribution) of any Shopify employee, member, or officer will result in immediate Account termination.

We reserve the right to provide our Services to your competitors and make no promise of exclusivity. You further acknowledge and agree that Shopify employees and contractors may also be Shopify customers or merchants and that they may compete with you, although they may not use your Confidential Information (as defined in Section 6) in doing so.

In the event of a dispute regarding Account ownership, we reserve the right to request documentation to determine or confirm Account ownership. Documentation may include, but is not limited to, a scanned copy of your business license, government issued photo ID, the last four digits of the credit card on file, or confirmation of your status as an employee of an entity.

Shopify reserves the right to determine, in our sole discretion, rightful Account ownership and transfer an Account to the rightful Store Owner. If we are unable to reasonably determine the rightful Store Owner, without prejudice to our other rights and remedies, Shopify reserves the right to temporarily suspend or disable an Account until resolution has been determined between the disputing parties.

**WHICH MEANS**

Shopify has the right to control who we make our Services available to and we can modify them at any time. We also have the right to refuse or remove Materials from any part of the Services, including your Store. We may offer our services to your competitors, but we will never share your confidential information with them in doing so. In the event of an ownership dispute over a Shopify Account, we can freeze a Shopify Account or transfer it to the rightful owner, as determined by us.

# 4. Your Responsibilities

You acknowledge and agree to provide public-facing contact information, a refund policy and order fulfilment timelines on your Shopify Store.

You acknowledge and agree that the Services are not a marketplace, and any contract of sale made through the Services is directly between you and the customer. You are the seller of record for all items you sell through the Services. You are responsible for the creation and operation of your Shopify Store, your Materials, the goods and services that you may sell through the Services, and all aspects of the transactions between you and your customer(s). This includes, but is not limited to,

authorizing the charge to the customer in respect of the customer's purchase, refunds, returns, fulfilling any sales or customer service, fraudulent transactions, required legal disclosures, regulatory compliance, alleged or actual violation of applicable laws (including but not limited to consumer protection laws in any jurisdiction where you offer products or services for sale), or your breach of these Terms of Service. You represent and warrant that your Store, your Materials and the goods and services you sell through the Services will be true, accurate, and complete, and will not violate any applicable laws, regulations or rights of third parties. For the avoidance of doubt, Shopify will not be the seller or merchant or record and will have no responsibility for your Store or items sold to customers through the Services.

You are solely responsible for the goods or services that you may sell through the Services (including description, price, fees, tax that you calculate, defects, required legal disclosures, regulatory compliance, offers or promotional content), including compliance with any applicable laws or regulations.

You may not use the Shopify Services for any illegal or unauthorized purpose nor may you, in the use of the Service, violate any laws in your jurisdiction (including but not limited to copyright laws), the laws applicable to you in your customer's jurisdiction, or the laws of Canada and the Province of Ontario. You will comply with all applicable laws, rules and regulations (including but not limited to obtaining and complying with the requirements of any license or permit that may be necessary to operate your store or that may be held by you) in your use of the Service and your performance of obligations under the Terms of Service.

The API Terms govern your access to and use of the Shopify API (as defined therein). You are solely responsible for the activity that occurs using your API Credentials (as defined in the API Terms) and for keeping your API Credentials secure.

**WHICH MEANS**

You are responsible for your Shopify Store, the goods or services you sell, and your relationship with your customers, not us. If you access the Shopify API, your use of the Shopify API is subject to the API Terms.

# 5. Payment of Fees and Taxes

You will pay the Fees applicable to your subscription to Online Service and/or POS Services ("**Subscription Fees**") and any other applicable fees, including but not limited to applicable fees relating to the value of sales made through your Store when using all payment providers other than Shopify Payments ("**Transaction Fees**"), and any fees relating to your purchase or use of any products or services such as Shopify Payments, POS Equipment, shipping, apps, Themes, domain names, Experts Marketplace, or Third Party Services ("**Additional Fees**"). Together, the Subscription Fees, Transaction Fees and the Additional Fees are referred to as the "**Fees**".

You must keep a valid payment method on file with us to pay for all incurred and recurring Fees. Shopify will charge applicable Fees to any valid payment method that you authorize ("**Authorized**

Payment Method"), and Shopify will continue to charge the Authorized Payment Method for applicable Fees until the Services are terminated, and any and all outstanding Fees have been paid in full. Unless otherwise indicated, all Fees and other charges are in U.S. dollars, and all payments will be in U.S. currency.

Subscription Fees are paid in advance and will be billed in 30 day intervals (each such date, a "**Billing Date**"). Transaction Fees and Additional Fees will be charged from time to time at Shopify's discretion. You will be charged on each Billing Date for all outstanding Fees that have not previously been charged. Fees will appear on an invoice, which will be sent to the Store Owner via the Primary Email Address provided. As well, an invoice will appear on the Account page of your Store's administrative console. Users have approximately two weeks to bring up and settle any issues with the billing of Subscription Fees.

If we are not able to process payment of Fees using an Authorized Payment Method, we will make a second attempt to process payment using any Authorized Payment Method, typically 14 days later, but Shopify may attempt sooner. If the second attempt is not successful, we will make a final attempt, typically 14 days following the second attempt, but in certain circumstances Shopify may do this second attempt sooner. If our final attempt is not successful, we may suspend and revoke access to your Account and the Services. Your Account will be reactivated upon your payment of any outstanding Fees, plus the Fees applicable to your next billing cycle. You may not be able to access your Account or your storefront during any period of suspension. If the outstanding Fees remain unpaid for 60 days following the date of suspension, Shopify reserves the right to terminate your Account in accordance with Section 14.

All Fees are exclusive of applicable federal, provincial, state, local or other governmental sales, goods and services (including Goods and Sales Tax under the Goods and Services Tax Act, Chapter 117A of Singapore), harmonized or other taxes, fees or charges now in force or enacted in the future ("**Taxes**").

You are responsible for all applicable Taxes that arise from or as a result of your subscription to or purchase of Shopify's products and services. To the extent that Shopify charges these Taxes, they are calculated using the tax rates that apply based on the billing address you provide to us. Such amounts are in addition to the Fees for such products and services and will be billed to your Authorized Payment Method. If you are exempt from payment of such Taxes, you must provide us with evidence of your exemption, which in some jurisdictions includes an original certificate that satisfies applicable legal requirements attesting to tax-exempt status. Tax exemption will only apply from and after the date we receive evidence satisfactory to Shopify of your exemption. If you are not charged Taxes by Shopify, you are responsible for determining if Taxes are payable, and if so, self-remitting Taxes to the appropriate tax authorities in your jurisdiction.

For the avoidance of doubt, all sums payable by you to Shopify under these Terms of Service will be paid free and clear of any deductions or withholdings whatsoever. Other than Taxes charged by Shopify to you and remitted to the appropriate tax authorities on your behalf, any deductions or withholdings that are required by law will be borne by you and paid separately to the relevant taxation authority. Shopify will be entitled to charge the full amount of Fees stipulated under these Terms of

Service to your Authorized Payment Method ignoring any such deduction or withholding that may be required.
You are solely responsible for determining, collecting, withholding, reporting, and remitting applicable taxes, duties, fees, surcharges and additional charges that arise from or as a result of any sale on your Shopify Store or your use of the Services. The Services are not a marketplace. Any contract of sale made through the Services is directly between you and the customer.
You must maintain an accurate location in the administrative console of your Shopify Store. If you change jurisdictions you must promptly update your location in the administrative console.
Shopify does not provide refunds.

**WHICH MEANS**

A valid payment method (such as a credit card) must remain on file to pay all service fees, including the subscription, transaction and additional fees required for all stores. You will be billed for your Subscription Fees every 30 days. Any Transaction Fees or Additional Fees will be charged to your payment method. If we are unable to process payment of Fees using your payment method, we will try again in 14 days (or sooner). If we are unable to process your payment of Fees on the second attempt, we will make a third and final attempt fourteen days later (or sooner). If payment of Fees is unsuccessful after three attempts, Shopify may freeze your store. You are responsible for all taxes relating to your Store or use of the Services. may be required to remit Taxes to Shopify or to self-remit to your local taxing authority. No refunds.

# 6. Confidentiality

"**Confidential Information**" will include, but will not be limited to, any and all information associated with a party's business and not publicly known, including specific business information, technical processes and formulas, software, customer lists, prospective customer lists, names, addresses and other information regarding customers and prospective customers, product designs, sales, costs (including any relevant processing fees), price lists, and other unpublished financial information, business plans and marketing data, and any other confidential and proprietary information, whether or not marked as confidential or proprietary. Shopify's Confidential Information includes all information that you receive relating to us, or to the Services, that is not known to the general public including information related to our security program and practices.
Each party agrees to use the other party's Confidential Information solely as necessary for performing its obligations under these Terms of Service and in accordance with any other obligations in these Terms of Service including this Section 6. Each party agrees that it will take all reasonable steps, at least substantially equivalent to the steps it takes to protect its own proprietary information, to prevent the duplication, disclosure or use of any such Confidential Information, other than (i) by or to its employees, agents and subcontractors who must have access to such Confidential Information to perform such party's obligations hereunder, who each will treat such Confidential Information as provided herein, and who are each subject to obligations of confidentiality to such party that are at

least as stringent as those contained herein; or (ii) as required by any law, regulation, or order of any court of proper jurisdiction over the parties and the subject matter contained in these Terms of Service, provided that, if legally permitted, the receiving party will give the disclosing party prompt written notice and use commercially reasonable efforts to ensure that such disclosure is accorded confidential treatment. Confidential Information will not include any information that the receiving party can prove: (A) was already in the public domain, or was already known by or in the possession of the receiving party, at the time of disclosure of such information; (B) is independently developed by the receiving party without use of or reference to the other party's Confidential Information, and without breaching any provisions of these Terms of Service; or (C) is thereafter rightly obtained by the receiving party from a source other than the disclosing party without breaching any provision of these Terms of Service.

**WHICH MEANS**

Both you and Shopify agree to use the Confidential Information of the other only to perform the obligations in these Terms of Service. Confidential Information must be protected and respected.

# 7. Limitation of Liability and Indemnification

You expressly understand and agree that, to the extent permitted by applicable laws, Shopify and its suppliers will not be liable for any direct, indirect, incidental, special, consequential or exemplary damages, including but not limited to, damages for loss of profits, goodwill, use, data or other intangible losses arising out of or relating to the use of or inability to use the Service or these Terms of Service (however arising, including negligence).

You agree to indemnify and hold us and (as applicable) our parent, subsidiaries, affiliates, Shopify partners, officers, directors, agents, employees, and suppliers harmless from any claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of (a) your breach of these Terms of Service or the documents it incorporates by reference (including the AUP); (b) or your violation of any law or the rights of a third party; or (c) any aspect of the transaction between you and your Customer, including but not limited to refunds, fraudulent transactions, alleged or actual violation of applicable laws (including but not limited to Federal and State consumer protection laws), or your breach of the Terms of Service.

You will be responsible for any breach of the Terms of Service by your affiliates, agents or subcontractors and will be liable as if it were your own breach.

Your use of the Services is at your sole risk. The Services are provided on an "as is" and "as available" basis without any warranty or condition, express, implied or statutory.

Shopify does not warrant that the Services will be uninterrupted, timely, secure, or error-free.

Shopify does not warrant that the results that may be obtained from the use of the Services will be accurate or reliable.

Shopify is not responsible for any of your tax obligations or liabilities related to the use of Shopify's Services.

Shopify does not warrant that the quality of any products, services, information, or other materials purchased or obtained by you through the Services will meet your expectations, or that any errors in the Services will be corrected.

**WHICH MEANS**

We are not responsible for damages or lawsuits that arise if you break the law, breach this agreement or go against the rights of a third party. The Service is provided on an "as is" and "as available" basis. We provide no warranties and our liability is limited in the event of errors or interruptions.

# 8. Intellectual Property and Your Materials

### 8.1 Your Materials

We do not claim ownership of the Materials you provide to Shopify; however, we do require a license to those Materials. You grant Shopify a non-exclusive, transferable, sub-licensable, royalty-free, worldwide right and license to host, use, distribute, expose, modify, run, copy, store, publicly perform, communicate to the public (including by telecommunication), broadcast, reproduce, make available, display, and translate, and create derivative works of any Materials provided by you in connection with the Services. We may use our rights under this license to operate, provide, and promote the Services and to perform our obligations and exercise our rights under the Terms of Service. You represent, warrant, and agree that you have all necessary rights in the Materials to grant this license. You irrevocably waive any and all moral rights you may have in the Materials in favour of Shopify and agree that this waiver may be invoked by anyone who obtains rights in the materials through Shopify, including anyone to whom Shopify may transfer or grant (including by way of license or sublicense) any rights in the Materials.

If you owned the Materials before providing them to Shopify then, despite uploading them to your Shopify Store they remain yours, subject to any rights or licenses granted in the Terms of Service or elsewhere. You can remove your Shopify Store at any time by deleting your Account. Removing your Shopify Store does not terminate any rights or licenses granted to the Materials that Shopify requires to exercise any rights or perform any obligations that arose during the Term.

You agree that Shopify can, at any time, review and delete any or all of the Materials submitted to the Services, although Shopify is not obligated to do so.

You grant Shopify a non-exclusive, transferable, sub-licensable, royalty-free, worldwide right and license to use the names, trademarks, service marks and logos associated with your Store ("**Your Trademarks**") to operate, provide, and promote the Services and to perform our obligations and exercise our rights under the Terms of Service. This license will survive any termination of the Terms of Service solely to the extent that Shopify requires the license to exercise any rights or perform any obligations that arose during the Term.

### 8.2 Shopify Intellectual Property

You agree that you may not use any trademarks, logos, or service marks of Shopify, whether registered or unregistered, including but not limited to the word mark SHOPIFY, the word mark SHOP, the word mark SHOP PAY, and the "**S**" and shopping bag design mark ("**Shopify Trademarks**") unless you are authorized to do so by Shopify in writing. You agree not to use or adopt any marks that may be considered confusing with the Shopify Trademarks. You agree that any variations or misspellings of the Shopify Trademarks would be considered confusing with the Shopify Trademarks.
You agree not to purchase, register, or use search engine or other pay-per-click keywords (such as Google Ads), trademarks, email addresses, social media names, or domain names (including without limitation top-level domains, sub-domains, and page URLs) that use or include Shopify or Shopify Trademarks or that use or include any terms that may be confusing with the Shopify Trademarks.
You acknowledge and agree that the Terms of Service do not give you any right to implement Shopify patents.

**WHICH MEANS**

Anything you upload remains yours (if it was yours) and is your responsibility, but Shopify can use and publish the things you upload. Anything uploaded to Shopify remains the property and responsibility of its initial owner. However, Shopify will receive a license of materials published through our platform that we may use to operate and promote our Services.

# 9. Additional Services

### 9.1 POS Services

In addition to the terms applicable to Services generally, the following terms apply to your access and use of the POS Services. The POS Services include the Shopify POS software ("**POS Software**"), the Shopify POS website, located at https://www.shopify.com/pos, programs, documentation, apps, tools, internet-based services and components, Shopify's POS hardware ("**POS Equipment**") and any updates thereto provided to you by Shopify.
Access to and use of the POS Services requires that you have an active and valid Account.
If your POS Services are enabled with Shopify Payments, you cannot concurrently use any other payment processing service. The payment gateway used for your POS Services must be the same as that used for your Online Services, if applicable.
You can terminate your POS Services without terminating your Account or any other Services you subscribe to, and in such case, you will continue to be billed, and will pay for, the Services (other than the terminated POS Services).
You agree to use the POS Services in accordance with all procedures that may be provided by Shopify from time to time.
While the POS Services use encryption technology, and the law generally prohibits third parties from monitoring transmission, we cannot guarantee security with respect to the connection to the POS Services, and we will not be liable for any unauthorized access to or use of data transmitted via the POS Services.

POS Equipment is purchased, and not leased. Purchase of the POS Equipment is subject to the POS Equipment Agreement, located at https://www.shopify.com/legal/terms. Upon payment by you for the POS Equipment, and confirmation to you of shipment of the POS equipment, you will acquire ownership of and title to the hardware components of the POS Equipment, and you will be licensed to access and use all POS Software installed in the POS Equipment (and any updates thereto), on a limited, non-exclusive, revocable, non-sublicensable, non-transferable basis, solely for the purposes of using the POS Services. POS Equipment is subject to our Return Policy, which can be found at https://hardware.shopify.com/pages/return-policy. Returns and refunds are not available for the Chip & Swipe Reader, Swipe (Audio Jack) and physical gift cards purchased from the Shopify Hardware Store.

The Fees for POS Services will be determined based on the number of locations at which you are using the POS Services. Locations are defined by business address and are used for associating orders with a specific business address. Locations are added through the Shopify web administrative console associated with your Account. The number of locations using POS Services will also be detected by us and billed accordingly as part of your regular billing cycle. In the event of any discrepancy between the number of locations added by you through the Shopify web administrative console and the number of locations detected by Shopify, the number of locations detected by Shopify will be deemed to be correct.

**WHICH MEANS**

If you use our POS Services, you must use the same payment processor that you use for the Online Services. You can cancel your POS Services at any time and still keep your Online Services active. While we take data security very seriously, we can't guarantee that all transmissions using the POS Equipment are 100% secure. All transactions transmitted using the POS Equipment are at your own risk. Remember that the POS equipment is purchased, not leased. Our POS Equipment return policy applies to all POS equipment, except Chip & Swipe Reader, Swipe (Audio Jack) and physical gift cards

### 9.2 Shopify Shipping

You can purchase shipping labels from within your Shopify administrative console ("**Shopify Shipping**") for delivery of goods purchased from you from your Shopify Store. In addition to these Terms of Service, your access to and use of Shopify Shipping is subject to the Shopify Shipping Terms of Service, located at (a) https://www.shopify.com/legal/terms-shipping-us if you are shipping from the United States; (b) https://www.shopify.com/legal/terms-shipping-ca, if you are shipping from Canada; and (c) https://www.shopify.com/legal/terms-shipping-global, if you are shipping from a location outside of Canada and the United States.

**WHICH MEANS**

If you use Shopify Shipping, you must comply with the Shopify Shipping Terms of Service.

### 9.3 SMS Messaging

The Services allow you to send certain communications to your customers by short message service (SMS) messaging (for example, sending order confirmation notifications via SMS) (the "SMS Services"). You will only use the SMS Services in compliance with these Terms of Service, any other applicable terms (including Nexmo Inc.'s Acceptable Use Policy and Twilio's Acceptable Use Policy,, as may be amended from time to time), and the laws of the jurisdiction from which you send messages, and in which your messages are received.

**WHICH MEANS**

when you use our SMS Services, you have to comply with our terms, the acceptable use policies of the SMS providers, and the law.

### 9.4 Theme Store

You may establish the appearance of your Shopify Store with a design template from Shopify's Theme Store (a "**Theme**"). If you download a Theme, you are licensed to use it for a single Store only. You are free to transfer a Theme to a second one of your own Stores if you close your first Store. To initiate a transfer of a Theme to a second one of your Stores, please contact Shopify Support. You are not permitted to transfer or sell a Theme to any other person's Store on Shopify or elsewhere. Multiple Stores require multiple downloads and each download is subject to the applicable fee. Shopify gives no assurance that a particular Theme will remain available for additional downloads.
You may modify the Theme to suit your Store. Shopify may add or modify the footer in a Theme that refers to Shopify at its discretion. Shopify may modify the Theme where it contains, in our sole discretion, an element that violates the Shopify AUP or other provisions of the Terms of Service, even if you received the Theme in that condition. Shopify may modify the Theme to reflect technical changes and updates as required.
The intellectual property rights of the Theme remain the property of the designer. If you exceed the rights granted by your purchase of a Theme, the designer may take legal action against you, and, without prejudice to our other rights or remedies, Shopify may take administrative action such as modifying your Store or closing your Store.
Technical support for a Theme is the responsibility of the designer, and Shopify accepts no responsibility to provide such support. Shopify may be able to help you contact the designer.
It is the responsibility of the user, and not Shopify, to ensure that the installation of a new theme does not overwrite or damage the current or preexisting theme, or UI, of the user.

**WHICH MEANS**

You can purchase our Themes to use for one Store at a time. You are free to modify our Themes, but do not infringe upon the intellectual property rights of others, including the designer. For Theme-related problems, contact the designer. Note that Themes may disappear over time and are subject to change.

### 9.5 Shopify Email

You may generate or send email from your Account using the Shopify email services (the "**Email Services**"). In addition to the terms applicable to the Services generally (including Shopify's Acceptable Use Policy, and Privacy Policy), the following terms apply to your access and use of the Email Services:

Shopify employs certain controls to scan the content of emails you deliver using the Email Services prior to delivery ("**Content Scanning**"). Such Content Scanning is intended to limit spam, phishing, or other malicious content that contravenes these Terms of Service, or Shopify's Acceptable Use Policy (collectively, "**Threats**"). By using the Email Services, you explicitly grant Shopify the right to employ such Content Scanning. Shopify does not warrant that the Email Services will be free from Threats, and each Shopify merchant is responsible for all content generated by their respective Stores. BY GENERATING OR SENDING EMAIL THROUGH THE EMAIL SERVICES, YOU AGREE TO COMPLY WITH THE FOLLOWING REQUIREMENTS (THE "**EMAIL SERVICES REQUIREMENTS**"). SHOPIFY, OR ITS THIRD PARTY PROVIDERS, MAY SUSPEND OR TERMINATE YOUR ACCESS TO AND USE OF THE EMAIL SERVICES IF YOU DO NOT COMPLY WITH THE EMAIL SERVICES REQUIREMENTS. 1. Your use of the Email Services must comply with all applicable laws. Examples of applicable laws include laws relating to spam or unsolicited commercial email ("**UCE**"), privacy, security, obscenity, defamation, intellectual property, pornography, terrorism, homeland security, gambling, child protection, and other applicable laws. It is your responsibility to know and understand the laws applicable to your use of the Email Services and the emails you generate or send through the Email Services. 2. Your use of the Email Services must comply with Shopify's Privacy Policy. It is your responsibility to read and understand the Privacy Policy applicable to your use of the Email Services and the emails you generate or send through the Email Services. 3. You will use commercially reasonable efforts not to send sensitive personal data, including information regarding an individual's medical or health condition, race or ethnic origin, political opinions, religious or philosophical beliefs, or other sensitive data (collectively, "**Sensitive Data**") through the Email Services. It is your responsibility to read and understand your obligations in relation to Sensitive Data. 4. Your use of the Email Services must follow all applicable guidelines established by Shopify. The guidelines below are examples of practices that may violate the Email Services Requirements when generating, or sending emails through the Email Services: using non-permission based email lists (i.e., lists in which each recipient has not explicitly granted permission to receive emails from you by affirmatively opting-in to receive those emails); using purchased or rented email lists;

using third party email addresses, domain names, or mail servers without proper permission; sending emails to non-specific addresses (e.g., webmaster@domain.com or info@domain.com); sending emails that result in an unacceptable number of spam or UCE complaints (even if the emails themselves are not actually spam or UCE);

failing to include a working "**unsubscribe**" link in each email that allows the recipient to remove themselves from your mailing list;

failing to comply with any request from a recipient to be removed from your mailing list within 10 days of receipt of the request;

failing to include in each email a link to the then-current privacy policy applicable to that email;

disguising the origin or subject matter of any email or falsifying or manipulating the originating email address, subject line, headers, or transmission path information for any email;

failing to include in each email your valid physical mailing address or a link to that information; or including "**junk mail**," "**chain letters**," "**pyramid schemes**," incentives (e.g., coupons, discounts, awards, or other incentives) or other material in any email that encourages a recipient to forward the Email to another recipient.

If you or a customer knows of or suspects any violations of the Email Services Requirements, please notify Shopify at abuse@shopify.com. Shopify will determine compliance with the Email Services Requirements in its discretion.

Shopify's Email Services utilize Third Party Providers, including SendGrid (a Twilio Company). Your use of the Email Services is subject to SendGrid's Acceptable Use Policy as it may be amended by SendGrid from time to time.

**WHICH MEANS**

By using the Email Services, you agree that Shopify may use certain tools to ensure the content of the emails sent through the service is safe and compliant with our policies.

### 9.6 Shop App

The Shop app is a Shopify application that is available to Eligible Merchants (defined below) (the "**Shop App**", more details here) to engage with customers that use the Shop App (each, a "**Shop App User**").

The Shop App is deemed to be a part of the Services, and all terms applicable to the Services apply. Without limiting the generality of the preceding sentence, and subject to these Terms of Service and all applicable guidelines and policies, Shopify reserves the right to refuse a Merchant access to or use of all or part of the Shop App for any reason and at any time without prior notice. Only those Merchants who meet all merchant requirements and do not sell any prohibited products, as outlined in the Shop Merchant Guidelines (as may be amended from time to time), are eligible to access and use the Shop App Services ("**Eligible Merchants**").

We may display your Materials, including product or service listings, Your Trademarks and any other content, data, or information from your Shopify Store on the Shop App. While the Shop App enables Shop App Users to shop natively in the Shop App, the transaction is completed on your Shopify Store. For clarity and avoidance of doubt, Section 7 (Limitation of Liability) and Section 8 (Intellectual Property) apply to the use of your Materials on the Shop App and your responsibility for your Materials and purchases made through your Shopify Store.

Your Materials and your use of the Shop App must comply at all times with our Shop App Merchant Guidelines, these Terms of Service, the Additional Terms, all other applicable policies and guidelines, and applicable law.

As in other areas of the Service, Shopify is not obligated to intervene in any dispute arising between you and your customers (including Shop App Users).

On the Shop App, we only show non-ad (unpaid, or 'organic') content. Organic content is ranked by factors including relevance to a search query or a user's interests, image quality, domain quality and how frequently other users have engaged with the content. For more information about how we display content on the Shop App, see our Shop App help documentation.

If you do not wish for your Materials to be available in the Shop App, it is your responsibility to manage or deactivate this Service. If you have the Shop App merchant channel installed, please see instructions here. If you do not yet have the Shop App merchant channel installed on your Shopify Store, install it here. If the Shop App merchant channel is not currently supported in your country, please contact support to remove your Materials from the Shop App. Note that if you remove your Materials from the Shop App, Shop App Users who purchase from your Shopify Store will continue to be able to view, manage and track orders from your Shopify Store in the Shop App. If you delete your Shopify Account, your Materials will be removed from the Shop App.

**WHICH MEANS**

The Shop App is a sales channel that is only available to Eligible Merchants and will display Materials from your Shopify Store. If you do not wish for your Materials to be available in the Shop App, it is your responsibility to manage or deactivate this Service.

### 9.7 Third Party Services, Experts, and Experts Marketplace

Shopify may from time to time recommend, provide you with access to, or enable third party software, applications ("**Apps**"), products, services or website links (collectively, "**Third Party Services**") for your consideration or use, including via the Shopify App Store, or Experts Marketplace. Such Third Party Services are made available only as a convenience, and your purchase, access or use of any such Third Party Services is solely between you and the applicable third party services provider ("**Third Party Provider**"). In addition to these Terms of Service, you also agree to be bound by the additional service-specific terms applicable to services you purchase from, or that are provided by, Third Party Providers.

Shopify Experts is an online directory of independent third parties ("**Experts**") that can help you build and operate your Shopify Store.

You can engage and work with an Expert directly or through Experts Marketplace. Experts Marketplace provides you with recommendations on Experts that can assist you with different aspects of your Store. Using Experts Marketplace, you can find, hire, and communicate with Experts directly from your Account admin.

Any use by you of Third Party Services offered through the Services, Shopify Experts, Experts Marketplace or Shopify's website is entirely at your own risk and discretion, and it is your responsibility to read the terms and conditions and/or privacy policies applicable to such Third Party Services before using them. In some instances, Shopify may receive a revenue share from Third Party Providers that Shopify recommends to you or that you otherwise engage through your use of the Services, Shopify Experts, Experts Marketplace or Shopify's website.

We do not provide any warranties or make representations to you with respect to Third Party Services. You acknowledge that Shopify has no control over Third Party Services and will not be responsible or liable to you or anyone else for such Third Party Services. The availability of Third Party Services on Shopify's websites, including the Shopify App Store or Experts Marketplace, or the integration or enabling of such Third Party Services with the Services does not constitute or imply an endorsement, authorization, sponsorship, or affiliation by or with Shopify. Shopify does not guarantee the availability of Third Party Services and you acknowledge that Shopify may disable access to any Third Party Services at any time in its sole discretion and without notice to you. Shopify is not responsible or liable to anyone for discontinuation or suspension of access to, or disablement of, any Third Party Service. Shopify strongly recommends that you seek specialist advice before using or relying on Third Party Services, to ensure they will meet your needs. In particular, tax calculators should be used for reference only and not as a substitute for independent tax advice, when assessing the correct tax rates you should charge to your customers.

If you install or enable a Third Party Service for use with the Services, you grant us permission to allow the applicable Third Party Provider to access your data and other Materials and to take any other actions as required for the interoperation of the Third Party Service with the Services, and any exchange of data or other Materials or other interaction between you and the Third Party Provider is solely between you and such Third Party Provider. Shopify is not responsible for any disclosure, modification or deletion of your data or other Materials, or for any corresponding losses or damages you may suffer, as a result of access by a Third Party Service or a Third Party Provider to your data or other Materials. Google Maps is a Third Party Service that is used within the Services. Your use of the Services is subject to your acceptance of the Google Maps and Earth Enterprise Universal Acceptable Use Policy, Google Maps and Google Earth Additional Terms of Service and Google Privacy Policy as it may be amended by Google from time to time.

You acknowledge and agree that: (i) by submitting a request for assistance or other information through Experts Marketplace, you consent to being contacted by one or more Experts at the Primary Email Address (or such other email address provided by you) as well as the applicable user email address; and (ii) Shopify will receive all email communications exchanged via Experts Marketplace or in any reply emails (each a "**Reply**") that originate from Experts Marketplace (directly or indirectly) between yourself and Experts. You further agree that Shopify may share your contact details and the background information that you submit via the Experts Marketplace with Experts. Experts may require access to certain admin pages on your Shopify Store. You choose the pages that the Experts can access.

The relationship between you and any Third Party Provider is strictly between you and such Third Party Provider, and Shopify is not obligated to intervene in any dispute arising between you and a Third Party Provider.

Under no circumstances will Shopify be liable for any direct, indirect, incidental, special, consequential, punitive, extraordinary, exemplary or other damages whatsoever, that result from any Third Party Services or your contractual relationship with any Third Party Provider, including any

Expert. These limitations will apply even if Shopify has been advised of the possibility of such damages. The foregoing limitations will apply to the fullest extent permitted by applicable law. You agree to indemnify and hold us and (as applicable) our parent, subsidiaries, affiliates, Shopify partners, officers, directors, agents, employees, and suppliers harmless from any claim or demand, including reasonable attorneys' fees, arising out of your use of a Third Party Service or your relationship with a Third Party Provider.

**WHICH MEANS**

We are not responsible for third party services, so use them at your own risk. If you choose to use Third Party Services on the Shopify platform, you consent to us sharing your data (and potentially the data of your Customers) to those services. If you use Third Party Services you agree that we do not provide a warranty, so get advice beforehand.

### 9.8 Beta Services

From time to time, Shopify may, in its sole discretion, invite you to use, on a trial basis, pre-release or beta features that are in development and not yet available to all merchants ("**Beta Services**"). Beta Services are not part of the Services, and Beta Services may be subject to additional terms and conditions, which Shopify will provide to you prior to your use of the Beta Services. Such Beta Services and all associated conversations and materials relating thereto will be considered Shopify Confidential Information and subject to the confidentiality provisions in this agreement. Without limiting the generality of the foregoing, you agree that you will not make any public statements or otherwise disclose your participation in the Beta Services without Shopify's prior written consent. Shopify makes no representations or warranties that the Beta Services will function. Shopify may discontinue the Beta Services at any time in its sole discretion. Shopify will have no liability for any harm or damage arising out of or in connection with a Beta Service. The Beta Services may not work in the same way as a final version. Shopify may change or not release a final or commercial version of a Beta Service in our sole discretion.

**WHICH MEANS**

Beta Services may be offered from time to time. They are not a part of the regular Services, and they might have errors or change at any time. You use Beta Services at your own risk, and we are not responsible for any losses or harm that might come from using a Beta Service. You may be required to keep your participation in the Beta Services confidential.

## 10. Feedback and Reviews

Shopify welcomes any ideas and/or suggestions regarding improvements or additions to the Services. Under no circumstances will any disclosure of any idea, suggestion or related material or any review of the Services, Third Party Services or any Third Party Provider (collectively, "**Feedback**") to Shopify be subject to any obligation of confidentiality or expectation of compensation. By

submitting Feedback to Shopify (whether submitted directly to Shopify or posted on any Shopify hosted forum or page), you waive any and all rights in the Feedback and that Shopify is free to implement and use the Feedback if desired, as provided by you or as modified by Shopify, without obtaining permission or license from you or from any third party. Any reviews of a Third Party Service or Third Party Provider that you submit to Shopify must be accurate to the best of your knowledge, and must not be illegal, obscene, threatening, defamatory, invasive of privacy, infringing of intellectual property rights, or otherwise injurious to third parties or objectionable. Shopify reserves the right (but not the obligation) to remove or edit Feedback of Third Party Services or Third Party Providers, but does not regularly inspect posted Feedback.

**WHICH MEANS**

We welcome customer feedback but are under no obligation to ensure that ideas and suggestions regarding our Services or the services of third parties remain confidential and we can use the feedback in any way we want.

## 11. DMCA Notice and Takedown Procedure

Shopify supports the protection of intellectual property and asks Shopify merchants to do the same. It's our policy to respond to all notices of alleged copyright infringement. If someone believes that one of our merchants is infringing their intellectual property rights, they can send a DMCA Notice to Shopify's designated agent using our form. Upon receiving a DMCA Notice, we may remove or disable access to the Materials claimed to be a copyright infringement. Once provided with a notice of takedown, the merchant can reply with a counter notification using our form if they object to the complaint. The original complainant has 14 business days after we receive a counter notification to seek a court order restraining the merchant from engaging in the infringing activity, otherwise we restore the material. Learn more at Reporting Intellectual Property Infringement.

**WHICH MEANS**

Shopify respects intellectual property rights and you should too. If we receive a DMCA Notice, we may disable access or remove the allegedly infringing content from your Store. If you don't think the claim is valid, you can send a counter notification. If you believe one of our merchants is infringing your intellectual property rights, you can send Shopify a DMCA Notice. We will expeditiously disable access or remove the content and notify the merchant.

## 12. Privacy and Data Protection

Shopify is firmly committed to protecting the privacy of your personal information and the personal information of your customers. By using the Service, you acknowledge and agree that Shopify's collection, usage and disclosure of this personal information is governed by our Privacy Policy.

Additionally, if: (a) you are established in the European Economic Area (EEA); (b) you provide goods or services to customers in the EEA; or (c) you are otherwise subject to the requirements of the EU General Data Protection Regulation, Shopify's collection and use of personal information of any European residents is also subject to our Data Processing Addendum.

**WHICH MEANS**

Shopify's use and collection of personal information is governed by our Privacy Policy. Additionally, if you or your customers are located in Europe, Shopify's use and collection of European personal information is further governed by our Data Processing Addendum.

# 13. Shopify Contracting Party

If the billing address of your Store is located in the United States or Canada, this Section 13(1) applies to you:

**"Shopify Contracting Party"** means Shopify Inc., a Canadian corporation, with offices located at 151 O'Connor Street, Ground floor, Ottawa, Ontario, K2P 2L8.

The parties irrevocably and unconditionally submit to the exclusive jurisdiction of the courts of the Province of Ontario with respect to any dispute or claim arising out of or in connection with the Terms of Service. The United Nations Convention on Contracts for the International Sale of Goods will not apply to these Terms of Service and is hereby expressly excluded.

If the billing address of your Store is located in the Asia Pacific region (including Australia, New Zealand, China, Japan, Singapore), this Section 13(2) applies to you:

**"Shopify Contracting Party"** means Shopify Commerce Singapore Pte. Ltd, a corporation formed under the laws of Singapore, with offices located at 77 Robinson Road, #13-00 Robinson 77, Singapore 068896.

The parties irrevocably agree that the courts of Singapore are to have exclusive jurisdiction to settle any dispute which may arise out of or in connection with the Terms of Service and that accordingly any proceedings arising out of or in connection with the Terms of Service will be brought in such courts. The United Nations Convention on Contracts for the International Sale of Goods will not apply to these Terms of Service and is hereby expressly excluded.

If the billing address of your Store is located in EMEA region or other jurisdictions not listed in Section 13(1) or 13(2), including Europe and Russia, the Middle East, Africa, South America, Caribbean, or Mexico this Section 13(3) applies to you:

**"Shopify Contracting Party"** means Shopify International Limited, a private company limited by shares, incorporated in Ireland under registration number 560279, with its registered offices located

at 2nd Floor Victoria Buildings, 1-2 Haddington Road, Dublin 4, D04 XN32, Ireland, VAT number IE 3347697KH and its website is at https://www.shopify.com/.

You irrevocably and unconditionally agree to submit to the jurisdiction of Irish courts, which have jurisdiction to settle any disputes which may arise out of or in connection with the validity, effect, interpretation or performance of these Terms of Service and you similarly irrevocably and unconditionally waive any objection to any claim that any suit, action or proceeding has been brought by Shopify in any other jurisdiction. The United Nations Convention on Contracts for the International Sale of Goods will not apply to these Terms of Service and is hereby expressly excluded.

# 14. Term and Termination

The term of these Terms of Service will begin on the date of your completed registration for use of a Service and continue until terminated by us or by you, as provided below (the "**Term**").

You may cancel your Account and terminate the Terms of Service at any time by contacting Shopify Support and then following the specific instructions indicated to you in Shopify's response.

Without limiting any other remedies, we may suspend or terminate your Account or the Terms of Service for any reason, without notice and at any time (unless otherwise required by law), including if we suspect that you (by conviction, settlement, insurance or escrow investigation, or otherwise) have engaged in fraudulent activity in connection with the use of the Services. Termination of the Terms of Service will be without prejudice to any rights or obligations which arose prior to the date of termination.

Upon termination of the Services by either party for any reason:

Shopify will cease providing you with the Services and you will no longer be able to access your Account;

unless otherwise provided in the Terms of Service, you will not be entitled to any refunds of any Fees, pro rata or otherwise;

any outstanding balance owed to Shopify for your use of the Services through the effective date of such termination will immediately become due and payable in full; and

your Shopify Store will be taken offline.

If you purchased a domain name through Shopify, upon cancellation your domain will no longer be automatically renewed. Following termination, it will be your sole responsibility to handle all matters related to your domain with the domain provider.

If there are any outstanding Fees owed by you at the date of termination of the Service, you will receive one final invoice via email. Once that invoice has been paid in full, you will not be charged

again.

**WHICH MEANS**

To initiate a termination, you must contact <u>Support</u>. Shopify will respond with specific information regarding the termination process for your account. Once termination is confirmed, domains purchased through Shopify will no longer be automatically renewed. If you cancel in the middle of your billing cycle, you'll have one last email invoice.

We may terminate your account at any time.

## 15. Modifications

We reserve the right, in our sole and absolute discretion, to update or change any portion of the Terms of Service at any time. We will provide you with reasonable advance notice of changes to the Terms of Service that materially adversely affect your use of the Services or your rights under the Terms of Service by sending an email to the Primary Email Address, providing notice through the Shopify administrative console, or by similar means. However, Shopify may make changes that materially adversely affect your use of the Services or your rights under the Terms of Service at any time and with immediate effect (i) for legal, regulatory, fraud and abuse prevention, or security reasons; or (ii) to restrict products or activities that we deem unsafe, inappropriate, or offensive. Unless we indicate otherwise in our notice (if applicable), any changes to the Terms of Service will be effective immediately upon posting of such updated terms at this location. Your continued access to or use of the Services after we provide such notice, if applicable, or after we post such updated terms, constitutes your acceptance of the changes and consent to be bound by the Terms of Service as amended. If you do not agree to the amended Terms of Service, you must stop accessing and using the Services.

Shopify may change the Fees for the Services from time-to-time. We will provide you with 30 days advanced notice prior to any changes in Fees by sending an email to the Primary Email Account, providing notice through the Shopify administrative console, or by similar means. Shopify will not be liable to you or to any third party for any modification, price change, suspension or discontinuance of the Services (or any part thereof).

**WHICH MEANS**

If we make a material change to the Terms of Service that adversely affects your rights under the Terms of Service or your use of our Services in a material way, we will notify you in advance (unless the change relates to legal requirements or to prevent abuse of our Services, among other things).

## 16. General Conditions

The Terms of Service, including the documents it incorporates by reference, constitute the entire agreement between you and Shopify and govern your use of the Services and your Account, superseding any prior agreements between you and Shopify (including, but not limited to, any prior versions of the Terms of Service).

The failure of Shopify to exercise or enforce any right or provision of the Terms of Service will not constitute a waiver of such right or provision. If any provision of the Terms of Service, including all terms and conditions and other documents it incorporates by reference, is held by a court of competent jurisdiction to be contrary to law, such provision will be changed and interpreted so as to best accomplish the objectives of the original provision to the fullest extent allowed by law, and the remaining provision of the Terms of Service will remain in full force and effect.

Save for Shopify and its affiliates, you or anyone accessing Shopify Services pursuant to these Terms of Service, unless otherwise provided in these Terms of Service, no person or entity who is not a party to these Terms of Service will have any right to enforce any term of these Terms of Service, regardless of whether such person or entity has been identified by name, as a member of a class or as answering a particular description. For the avoidance of doubt, this will not affect the rights of any permitted assignee or transferee of these Terms.

The Terms of Service will be governed by and interpreted in accordance with the laws of the Province of Ontario and the laws of Canada applicable therein, without regard to principles of conflicts of laws.

The Terms of Service may be available in languages other than English. To the extent of any inconsistencies or conflicts between these English Terms of Service and Shopify's Terms of Service available in another language, the most current English version of the Terms of Service at https://www.shopify.com/legal/terms will prevail. Any disputes arising out of these Terms of Service will be resolved in English unless otherwise determined by Shopify (acting in its sole discretion) or as required by applicable law.

All the terms and provisions of the Terms of Service will be binding upon and inure to the benefit of the parties to the Terms of Service and to their respective heirs, successors, permitted assigns and legal representatives. Shopify will be permitted to assign these Terms of Service without notice to you or consent from you. You will have no right to assign or otherwise transfer the Terms of Service, or any of your rights or obligations hereunder, to any third party without Shopify's prior written consent, to be given or withheld in Shopify's sole discretion.

If any provision, or portion of the provision, in these Terms of Service is, for any reason, held to be invalid, illegal or unenforceable in any respect, then such invalidity, illegality or unenforceability will not affect any other provision (or the unaffected portion of the provision) of the Terms of Service, and the Terms of Service will be construed as if such invalid, illegal or unenforceable provision, or portion of the provision, had never been contained within the Terms of Service.

On termination, all related rights and obligations under the Terms of Service immediately terminate, except that (a) you will remain responsible for performing all of your obligations in connection with transactions entered into before termination and for any liabilities that accrued before or as a result of termination; and Sections 1 (Account Terms), 5 (Payment of Fees), 6 (Confidentiality), 7 (Limitation of Liability and Indemnification), 8.1 (Intellectual Property and Your Materials), 9.7(8)-(10) (Third Party Services, Experts, and Experts Marketplace), 10 (Feedback and Reviews), 12 (Privacy and Data Protection), 13 (Shopify Contracting Party), 14 (Cancellation and Termination), 15(1) (Modifications), and 16 (General Conditions) will survive the termination or expiration of these Terms of Service.

Shopify Inc.
151 O'Connor Street, Ground floor
Ottawa, ON K2P 2L8
Canada

About    Careers    Press and Media    Shopify Plus    Sitemap

**ONLINE STORE**

Sell online

Features

Examples

Website builder

Online retail

Ecommerce website

Domain names

Themes

Shopping cart

Ecommerce hosting

Mobile commerce

Ecommerce software

Online store builder

Dropshipping Business

Store themes

**POINT OF SALE**

Point of sale

Features

Hardware

**SUPPORT**

24/7 support

Shopify Help Center

Shopify Community

API documentation

Free tools

Free stock photos

Websites for sale

Logo Maker

Business name generator

Research

Legal

**SHOPIFY**

Contact

Partner program

Affiliate program

App developers

Investors

Blog topics

Community Events

Terms of Service  Privacy Policy   USA

# EXHIBIT F

## DEBTOR IN POSSESSION LOAN AND SECURITY AGREEMENT

**THIS DEBTOR IN POSSESSION LOAN AND SECURITY AGREEMENT** (this "**Agreement**") is dated as of June , 2022 between **Michael Nelson,** an individual with the following address: _____ ("**Lender**"), and Nextsport Inc., a California corporation ("**Company**"). Subject to approval of the Bankruptcy Court in the **Company's** Chapter 11 Bankruptcy proceeding (the "**Bankruptcy Case**"), the parties agree as follows:

1) **Advances and the Loan.**

    (a) <u>Promise to Pay</u>. Company hereby unconditionally promises to pay Lender, the outstanding principal amount of all Advances, and collectively the Loan, to Borrower by Lender and accrued and unpaid interest thereon and any other amounts due hereunder as and when due in accordance with this Agreement.

    (b) <u>Available Advances</u>. Subject to the terms and conditions of this Agreement, Lender agrees to make term loans to Borrower in an aggregate principal amount of up to Five Hundred Thousand Dollars ($500,000.00) to be disbursed as follows:

        a. an amount equal to One Hundred and Fifty Thousand Dollars ($150,000.00) on the Effective Date ("**First Advance**") and

        b. the remaining amount of Three Hundred and Fifty Thousand ($350,000.00) to be disbursed on or about July 16, 2022 ("**Second Advance**" which along with the First Advance, such term loans are hereinafter referred to singly as an "**Advance**", and collectively as the "**Loan**").

    Each Advance shall be evidenced by a Secured Promissory Note in the form attached as Exhibits A and B hereto (each a "**Secured Promissory Note**") and shall be repayable as set forth in this Agreement.

2) **Repayment.** Company shall repay to Lender all Advances plus all other outstanding obligations on a quarterly basis on or before October 1, 2022 (the "**Maturity Date**").

3) **Permitted Prepayment.** Company shall have the option to prepay all, but not less than all, of the Advances, or the entire Loan amount plus all other obligations related to the Loan at any time and without penalty.

4) **Interest.** Interest on the principal amount of each Advance shall be twenty-two and a half percent (22.5%) per annum.

5) **Payments.** All payments (including prepayments) to be made by Company under this Agreement shall be made in immediately available funds in Dollars, without setoff, counterclaim, or deduction, before 12:00 p.m. Pacific time on the date when due. Payments of principal and/or interest received after 12:00 p.m. Pacific time are considered received at the opening of business on the next Business Day. When a payment is due on a day that is not a Business Day, the payment shall be due the next Business Day, and additional fees or interest, as applicable, shall continue to accrue until paid.

6) **Grant of Security Interest.** As consideration for Lender's agreement to make the Loan to Company, Company hereby grants Lender, to secure the payment and performance in full of all the Company's obligations hereunder:(a) a continuing security interest in, and pledges to Lender, the Collateral, wherever now owned or hereafter acquired or arising, and all proceeds and accounts receivable related to such products; and (b) a continuing security interest on all remaining assets of the Company provided that such additional security interest shall be subordinate and junior to all existing secured creditors with liens on all assets of the Company.

7) **Administrative Claim.** Lender shall be entitled to an administrative claim pursuant to 11 U.S.C. Section 503 of the Bankruptcy Code in an amount equal to any unpaid portion of the Advance.

8) **Authorization to File Financing Statements.** Company hereby authorizes Lender to file financing statements, without notice to Company, with all jurisdictions deemed necessary or appropriate by Lender to perfect or protect Lender's interest or rights hereunder.

9) **Termination.** If this Agreement is terminated, Lender's lien in the Collateral shall continue until the obligations under this Agreement are repaid in full in cash. Upon payment in full in cash of the Company's obligations under this Agreement, Lender shall, at Company's sole cost and expense, terminate its security interest in the Collateral and all rights therein shall revert to Company.

10) **Insurance.** Company shall keep its business and the Collateral insured for risks and in amounts standard for companies in Company's industry and location. Insurance policies shall be in a form, with financially sound and reputable insurance companies.

11) **Events of Default.** The following shall constitute an event of default (an **"Event of Default"**) under this Agreement: (a) Company fails to (a) make any payment of principal or interest on any Advances or the Loan on its due date, or within three (3) Business Days after such obligations are due and payable; or (b) Company or any Person acting for Company makes any representation, warranty, or other statement now or later in this Agreement, or in any writing delivered to Lender or to induce Lender to enter this Agreement, and such representation, warranty, or other statement is incorrect in any material respect when made.

12) **Consultation With Counsel.** Lender acknowledges that Lender has carefully read and fully understands this Agreement, and that Lender has had the opportunity to raise with the Company any questions, concerns or issues Lender may have in connection with this Agreement, or its terms. Lender further acknowledges that Lender has been advised to, and has had the opportunity, and has taken that opportunity to the extent Lender deemed appropriate and necessary, to consult legal counsel of Lender's choice in connection with this Agreement and consents to all of the terms and provisions contained herein knowingly, voluntarily and without any reservation whatsoever.

13) **No Waiver; Remedies Cumulative.** Lender's failure, at any time or times, to require strict performance by Company of any provision of this Agreement shall not waive, affect, or diminish any right of Lender thereafter to demand strict performance and compliance herewith or therewith. Lender has all rights and remedies provided under the Code, by law, or in equity.

14) **Notices.** All notices, consents, requests, approvals, demands, or other communication by any party to this Agreement must be in writing and shall be deemed to have been validly served, given, or delivered: upon transmission, when sent by electronic mail; or one (1) Business Day after deposit with a reputable overnight courier with all charges prepaid.

15) **Governing Law.** California law governs the Loan Agreement and related documents without regard to principles of conflicts of law that would require the application of the laws of another jurisdiction. Company and Lender each irrevocably and unconditionally submit to the exclusive jurisdiction of the State and Federal courts in Alameda County, California.

16) **Successors and Assigns.** This Agreement binds and is for the benefit of the successors and permitted assigns of each party. Company may not assign or transfer this Agreement or any rights or obligations under it without Lender's prior written consent (which may be granted or withheld in Lender's sole discretion) and any other attempted assignment or transfer by Company shall be null and void.

17) **Time of Essence.** Time is of the essence for the performance of all obligations in this Agreement.

18) **Severability of Provisions.** Each provision of this Agreement is severable from every other provision in determining the enforceability of any provision.

19) **Amendments in Writing; Integration.** No amendment to this Agreement shall be effective unless, and only to the extent, expressly set forth in a writing signed by each party hereto. This Agreement constitutes the complete understanding of the parties to this Agreement as to the subject matter herein.

20) **Counterparts.** This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, is an original, and all taken together, constitute one Agreement. Delivery of an executed signature page of this Agreement by electronic mail transmission shall be effective as delivery of a manually executed counterpart hereof.

21) **Relationship.** The relationship of the parties to this Agreement is determined solely by the provisions of this Agreement. The parties do not intend to create any agency, partnership, joint venture, trust, fiduciary or other relationship with duties or incidents different from those of parties to an arm's-length contract.

22) **Third Parties.** Nothing in this Agreement, whether express or implied, is intended to: (a) confer any benefits, rights or remedies under or by reason of this Agreement on any Persons other than the express parties to it and their respective permitted successors and assigns; (b) relieve or discharge the obligation or liability of any Person not an express party to this Agreement; or (c) give any Person not an express party to this Agreement any right of subrogation or action against any party to this Agreement.

Case: 22-40569    Doc# 9    Filed: 06/13/22    Entered: 06/13/22 18:13:18    Page 67 of 70

23) **Bankruptcy Court Approval**. The Agreement is conditioned on and subject to an order being entered in the Bankruptcy Case approving the terms and conditions of the Agreement

24) **Definitions.** Capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in this Section. All other terms contained in this Agreement, unless otherwise indicated, shall have the meaning provided by the Code to the extent such terms are defined therein. As used in this Agreement, the following capitalized terms have the following meanings:

"**Applicable Law**" means all applicable provisions of constitutions, laws, statutes, ordinances, rules, treaties, regulations, permits, licenses, approvals, interpretations and orders of courts or Governmental Authorities and all orders and decrees of all courts and arbitrators.

"**Business Day**" is a day other than a Saturday, Sunday or other day on which commercial Lenders in the State of California are authorized or required by law to close, except that if any determination of a "Business Day" shall relate to an FX Contract, the term "Business Day" shall be a FX Business Day.

"**Code**" is the Uniform Commercial Code, as the same may, from time to time, be enacted and in effect in the State of California; provided, that, to the extent that the Code is used to define any term herein or in any Loan Document and such term is defined differently in different Articles or Divisions of the Code, the definition of such term contained in Article or Division 9 shall govern; provided further, that in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection, or priority of, or remedies with respect to, Lender's Lien on any Collateral is governed by the Uniform Commercial Code in effect in a jurisdiction other than the State of California, the term "Code" shall mean the Uniform Commercial Code as enacted and in effect in such other jurisdiction solely for purposes of the provisions thereof relating to such attachment, perfection, priority, or remedies and for purposes of definitions relating to such provisions.

"**Collateral**" consists of a senior lien on Spinner Shark Units that will be produced for the Wal-Mart Feature program starting after the Bankruptcy Case is filed upon approval of the Agreement by the Bankruptcy Court and a junior lien on the **Company's** assets.

"**Person**" is any individual, sole proprietorship, partnership, limited liability company, joint venture, company, trust, unincorporated organization, association, corporation, institution, public benefit corporation, firm, joint stock company, estate, entity or government agency.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the Effective Date.

**Company: Nextsport Inc.**                    **Lender: Michael Nelson**

By:                                            Name:
Name:

Case: 22-40569   Doc# 9   Filed: 06/13/22   Entered: 06/13/22 18:13:18   Page 68 of 70

## EXHIBIT A
## SECURED PROMISSORY NOTE

$150,000 Advance

June 9, 2022

FOR VALUE RECEIVED, the undersigned, Nextsport, Inc., a California corporation with offices located at 106 Linden Street, Oakland, California ("**Borrower**") HEREBY PROMISES TO PAY to the order of Michael Nelson ("**Lender**") the principal amount of One Hundred and Fifty Thousand Dollars ($150,000.00), plus interest on the aggregate unpaid principal amount of such First Advance, at the rates and in accordance with the terms of the Loan and Security Agreement dated June 9, 2022 by and among Borrower, Lender (the "**Loan Agreement**").

If not sooner paid, the entire principal amount and all accrued and unpaid interest hereunder shall be due and payable on the Maturity Date as set forth in the Loan Agreement.

Any capitalized term not otherwise defined herein shall have the meaning attributed to such term in the Loan Agreement.

Principal, interest, and all other amounts due with respect to the Loan, are payable in lawful money of the United States of America to Lender as set forth in the Loan Agreement and this Secured Promissory Note (this "**Note**").

The Loan Agreement, among other things, provides for the making of a secured Loan by Lender to Borrower and contains provisions for acceleration of the maturity hereof upon the happening of certain stated events. This Note and the obligation of Borrower to repay the unpaid principal amount of the Loan, interest on the Loan and all other amounts due Lender under the Loan Agreement is secured under the Loan Agreement.

Borrower shall pay all reasonable and documented out-of-pocket fees and expenses, including, without limitation, reasonable and documented attorneys' fees and costs, incurred by Lender in the enforcement or attempt to enforce any of Borrower's obligations hereunder not performed when due, all in accordance with the Loan Agreement.

THE TERMS OF SECTIONS 10-22 OF THE LOAN AGREEMENT ARE HEREBY INCORPORATED BY REFERENCE.

IN WITNESS WHEREOF, Borrower has caused this Note to be duly executed by one of its officers thereunto duly authorized on the date hereof.

BORROWER: Nextsport Inc.

Name:

Title:

**SECURED PROMISSORY NOTE**

$350,000 Advance                                                                                    July 16, 2022

      FOR VALUE RECEIVED, the undersigned, Nextsport, Inc., a California corporation with offices located at 106 Linden Street, Oakland, California ("**Borrower**") HEREBY PROMISES TO PAY to the order of Michael Nelson ("**Lender**") the principal amount of Three Hundred and Fifty Thousand Dollars ($350,000.00), plus interest on the aggregate unpaid principal amount of such First Advance, at the rates and in accordance with the terms of the Loan and Security Agreement dated June 9, 2022 by and among Borrower, Lender (the "**Loan Agreement**").

If not sooner paid, the entire principal amount and all accrued and unpaid interest hereunder shall be due and payable on the Maturity Date as set forth in the Loan Agreement.

Any capitalized term not otherwise defined herein shall have the meaning attributed to such term in the Loan Agreement.

Principal, interest, and all other amounts due with respect to the Loan, are payable in lawful money of the United States of America to Lender as set forth in the Loan Agreement and this Secured Promissory Note (this "**Note**").

The Loan Agreement, among other things, provides for the making of a secured Loan by Lender to Borrower and contains provisions for acceleration of the maturity hereof upon the happening of certain stated events. This Note and the obligation of Borrower to repay the unpaid principal amount of the Loan, interest on the Loan and all other amounts due Lender under the Loan Agreement is secured under the Loan Agreement.

Borrower shall pay all reasonable and documented out-of-pocket fees and expenses, including, without limitation, reasonable and documented attorneys' fees and costs, incurred by Lender in the enforcement or attempt to enforce any of Borrower's obligations hereunder not performed when due, all in accordance with the Loan Agreement.

THE TERMS OF SECTIONS 10-22 OF THE LOAN AGREEMENT ARE HEREBY INCORPORATED BY REFERENCE.

IN WITNESS WHEREOF, Borrower has caused this Note to be duly executed by one of its officers thereunto duly authorized on the date hereof.

BORROWER: Nextsport Inc.

_____

Name:

_____

Title: