Andrew Goodman, Esq. (State Bar No. 115685)
**GOODMAN LAW OFFICES**
**A PROFESSIONAL CORPORATION**
30700 Russell Ranch Road, Suite 250
Westlake Village, California 91362
PHONE: (818) 802-5044;
FACSIMILE: (818) 975-5256
E-Mail: agoodman@andyglaw.com

Attorneys for ADP TotalSource, Inc

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re<br><br>NEXTSPORT, INC., | Case No. 22-40569 WJL<br><br>Chapter 11<br><br>**MOTION FOR APPROVAL OF STIPULATION TO MODIFY AUTOMATIC STAY AND OPPORTUNITY FOR OBJECTIONS** |

**TO: ALL CREDITORS AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that debtor and debtor-in-possession NEXTSPORT, INC. ("Debtor"), has entered into a stipulation with ("TotalSource") to modify the automatic stay.

### I. FACTUAL BACKGROUND

1. The Debtor and TotalSource are parties to that certain Client Services Agreement dated August 21, 2019 (the "CSA"), pursuant to which TotalSource provides to the Debtor human resource services under an arrangement whereby the parties act as co-employers of the employees providing services to the Debtor, referred to in the CSA as the Worksite Employees (the "Worksite Employees").

2. Pursuant to the CSA, the Debtor is required to fund the gross payroll for the Worksite Employees and TotalSource, in turn, issues the payroll to the Worksite Employees.

///

3.      Pursuant to the CSA, Debtor is also required to pay workers compensation administration fees and health insurance premiums to TotalSource, which in turn provides those offerings to the Debtor.

4.      The failure of the Debtor to comply timely with the terms of the CSA puts TotalSource at risk in its role as co-employer of the Worksite Employees.

5.      In order to protect TotalSource against potential exposure should the Debtor fail to comply with the terms of the CSA, Part 2, Section 13A of the CSA allows TotalSource to terminate the CSA "immediately and without prior notice to [the Debtor]" in the event of "[the Debtor's] non-payment of any amount due to TotalSource," among other things."

6.      Part 2, Section 13A of the CSA further provides that either party may terminate the CSA for any reason upon 30 days' prior written notice (the "30-Day Notice Provision").

7.      On July 13, 2022, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code and continues to maintain its assets and operate its business as a debtor in possession.

8.      The Debtor desires to continue engaging TotalSource for the services provided for under the CSA in accordance with the terms of the CSA.

9.      On March 30, 2023, the Debtor and TotalSource entered into a Stipulation to Modify the Automatic Stay ("Stipulation")[Docket No. 190]. A copy of the Stipulation is attached as **Exhibit "A"** to the Declaration of Lucas Ordonez filed in support herewith. Pursuant to the Stipulation, Debtor and TotalSource stipulate as follows:

A.      In accordance with the terms of the CSA, as modified, no later than 72 hours prior to the Debtor's regularly scheduled payroll date, the Debtor shall timely pay by Automatic Clearing House debit transfer, wire transfer, or as otherwise approved by TotalSource, the gross payroll and all fees due for that pay period and submit all reports needed to process that payroll.

B.      In the event the Debtor fails to make any payment when due or fails to submit timely to TotalSource the information needed for TotalSource to process payroll, time being of the essence, TotalSource shall have the right to terminate the CSA immediately and

without further court order, pursuant to the terms of the CSA, provided, however that TotalSource shall first provide the Debtor's representative, David Lee, *david@nextsport.com*; and its attorneys Chris D. Kuhner, *c.kuhner@kornfieldlaw.com* and Eric A. Nyberg, *e.nyberg@kornfieldlaw.com*, with at least 48 hours' written notice and an opportunity to cure.

        C.    Notwithstanding anything contained in the CSA, TotalSource shall not seek to exercise its right to terminate the CSA under the 30-Day Notice Provision prior to the earliest to occur of (a) confirmation of a Chapter 11 plan, (b) conversion of this case to Chapter 7, (c) dismissal of this case, (d) the termination of all Worksite Employees, or (e) the passage of one year.

        D.    Except as set forth herein, the CSA shall remain in full force and effect without modification.

        E.    Nothing contained herein shall constitute a waiver of the right of TotalSource to seek to terminate the CSA for a reason other than that set forth in paragraph 2 hereof upon motion to this Court, or for the Debtor to oppose any such effort by TotalSource. The legal rights and obligations under the terms of the Stipulation are intended to, and shall, inure to the benefit of, and be binding upon the parties to the Stipulation and their respective legal representatives, successors, and assigns.

## BASIS FOR RELIEF REQUESTED

Pursuant to Federal Rules of Bankruptcy Procedure 9019, "the court may approve a compromise or settlement." F.R.B.P. 9019(a). The "may" language of Rule 9019 indicates that the approval or disapproval of a proposed settlement lies within the sound discretion of the Court. A court should approve a compromise or settlement in bankruptcy if the settlement is "fair and equitable." *In re A&C Properties*, 784 F. 2d 1377 (9th Cir. 1986). The Court should consider the following factors in considering whether a proposed settlement is fair and equitable:

(a) The probability of success in the litigation;

(b) The difficulties, if any, to be encountered in the matter of collections;

(c) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d) The paramount interest of the creditors and a proper difference to their reasonable views and the premises. *In re A&C Properties*, 784 F.2d at 1381; *Woodson v. Fireman's Fund Ins. Co.* (*In re Woodson*), 839 F. 2d 610, 620 (9th Cir. 1988).

Basic to this determination is consideration of the "likely rewards of litigation." *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968).

The bankruptcy court is not required to decide the numerous questions of law and facts raised by the litigation. Instead, the bankruptcy court's responsibility is only to "canvas the issues to see whether the settlement falls below the lower point in the range of reasonableness." *Cosoff v. Rodney* (*In re W.T. Grant Co.*) 699 F.2d 599, 613 (2nd Cir. 1983). The Court should withhold approval only if the settlement falls below the lowest point in the range of reasonableness. *In re Penn. Truck Lines, Inc.*, 150 B.R. 595, 601 (E.D. PA 1992).

Here, the proposed settlement set forth in the Stipulation meets the requirements for approval.

1. Probability of Success.

TotalSource provides human resource services to Debtor under an arrangement where by the parties act as co-employers of the employees providing services to the Debtor, referred to in the CSA as the Worksite Employees (the "Worksite Employees").

Debtor funds the gross payroll and TotalSource issues the payroll to the Worksite Employees. Failure to fund the gross payroll puts TotalSource at risk in its role as co-employer of the Worksite Employees.

Pursuant to the Settlement/Stipulation should the Debtor fail to comply with the terms of the CSA, Part 2, Section 13A, TotalSource may terminate the CSA "immediately and without prior notice to [the Debtor] "in the event of [the Debtor's] non-payment of any amount due to Total Source," among other things and finally, Part 2, Section 13A of the CSA provides that either party may teremintate the agreement for any reason upon 30 days' prior written notice (the "30-Day Notice Provision"). Otherwise, the CSA shall remain in full force and effect without modification.

2. Difficulties of Collection.

This factor is not implicated in this analysis.

3. Complexity and Expense of Litigation.

As set forth above, the CSA allows Debtor to fund payroll for the Worksite Employees and for TotalSource to pay the Worksite Employees, thus preventing interruption of Debtor's business operations. To contest TotalSource's rights, the Debtor would be required to file an adversary proceeding, engage in discovery and ultimately participate in a trial on the merits. The cost to the estate would be significant and would delay this bankruptcy case significantly.

4. Paramount Interest of the Creditors.

The Stipulation resolves a critical issue in this case and allows the Debtor to continue to operate and have its employees paid.

**CONCLUSION**

**WHEREFORE**, the Debtor requests the Court grant the relief requested herein and the Stipulation be approved.

DATED: April 13, 2023

GOODMAN LAW OFFICES
A Professional corporation

By: /s/ Andrew Goodman
ANDREW GOODMAN, ESQ.
Counsel for ADP TotalSource, Inc.

mtntoapproverfsstip